Owen *v.* Farmers' Joint Stock Insurance Company.

The defendants were exonerated from liability after the goods were delivered to the consignee, and no steps were taken to bring them within the rule laid down in the case last cited, after they were thus discharged.

In no aspect in which the case can be considered can the defendants be held liable; and the judge, upon the trial, in my opinion, committed no error in his rulings, and properly directed a nonsuit.

A new trial must be denied, with costs.

[ALBANY GENERAL TERM, March 7, 1870. *Hogeboom, Ingalls* and *Miller,* Justices.]

———————•••———————

OWEN *vs.* THE FARMERS' JOINT STOCK INSURANCE COMPANY.

The omission of a party insured to deliver a particular account of his loss and damage, as required by one of the conditions annexed to the policy, is fatal to his right to recover upon the policy.

Such a provision is a condition precedent, the performance of which, by the insured, is indispensable to his right of recovery, unless it has been dispensed with, or waived, by the insurers.

Time is of the essence of the contract, in conditions of this kind, and there is no power in the court to dispense with the condition, or excuse the non-performance of it.

It is only when a duty is created by the law that a party is excused from performing it, if performance is rendered impossible by act of God, and not when the duty is created by contract.

Conditions of this kind, in a policy of insurance, are designed and inserted for the benefit of the insurer, and may be waived by him; and the courts should construe them most liberally in favor of the assured, and most strictly against the insurer.

A policy contained a condition that, in case of loss, the assured should deliver a particular account thereof to the insurers within ten days. A loss occurred on the 20th of May, 1868. Notice was given, immediately afterwards, to the agent of the insurers at the place where the premises were situated. On the 10th of June, the insurers' general agent and adjuster of losses, with one of the directors and a member of the executive committee, came to the place where the premises were situated, for the purpose of settling the loss. On the 1st of July said agent came a second time, stating that he came to

Owen *v.* Farmers' Joint Stock Insurance Company.

adjust the loss. Being told that the assured was absent, and that the proofs of loss had not yet been prepared, he said it would make no difference; that the proofs could be made up and sent when the assured returned. Upon the return of the assured, on the 14th of August, the proofs were mailed to the insurers, who, after keeping them ten days, returned the same to the assured, then informing him, for the first time, that they intended to contest the claim.

*Held* that these facts constituted a distinct recognition of the liability of the insurers for the loss, after the expiration of the ten days for the service of the preliminary proof. And that this was sufficient to establish a *waiver* of such proof within the ten days.

The general agent of an insurance company has power to bind the company, by making such a waiver.

The fact that insurers, after the time for furnishing the preliminary proofs has expired, put their resolution to contest the claim upon other grounds than the omission to furnish such proofs, is a waiver of that ground of defense.

A policy of insurance was taken at the instance of the insurers' agent, and in exchange for one he had previously issued as the agent of another company. The application was written by such agent, and the name of the assured was put to it by such agent. It was stated therein that there were no incumbrances on the property. It was shown that nothing was said by either party about any incumbrance or lien by judgment, when inquiry was made about incumbrances; or any thing suggesting any necessity or occasion to speak about judgments. *Held* that the inquiry suggested in the application, in respect to incumbrances, was, in fact, and should be in law, limited to mortgages, or incumbrances creating a specific lien on the land. And that the assured was not called upon to say anything about judgments.

*Held, also,* that in this view of the statement in the application that there was no incumbrance on the property—whether it were viewed as a warranty, or as a representation—there was in fact no intentional concealment or misrepresentation, although there were, at the time, judgments which were liens upon the premises; and that the refusal of the judge to nonsuit upon that ground was not erroneous.

When asked if the premises are incumbered, the applicant, in his answer, need go no further than to mention all specific liens upon the land by mortgage, contract to sell, charges upon the property by will or otherwise, or certificate of sale by the sheriff, if the premises have been sold on execution upon any judgment.

APPEAL by the defendant from a judgment entered upon the verdict of a jury in an action upon a policy of insurance. The material facts, and the legal questions arising thereon, appear sufficiently in the opinion of the court.

*Bradley & Kendall*, for the plaintiff.

*Rumsie & Robie*, for the defendants.

*By the Court*, E. DARWIN SMITH, J.　The first question presented upon this appeal is, whether the omission of the plaintiff to deliver a particular account of his loss and damage within ten days after such loss, according to the 7th section of the conditions annexed to the policy, is fatal to his right to recover.　Such a provision is doubtless a condition precedent, the performance of which by the plaintiff is indispensable to his right of recovery, unless it has been dispensed with or waived by the defendant.　(*Inman* v. *Western Insurance Co.*, 12 *Wend.* 460.) Time, too, is of the essence of the contract in conditions of this kind, and there is no power in the court to dispense with the condition, or excuse the non-performance of it. It is only when a duty is created by the law that a party is excused from performing it if performance is rendered impossible by act of God, and not when the duty is created by contract.　(*Hormony* v. *Bingham*, 2 *Kern.* 99.)

But conditions of this kind, in a policy of insurance, are designed and inserted for the benefit of the insurer, and may be waived by him, and the courts should construe them most liberally in favor of the assured, and most strictly against the insurer.　(*Bumpstead* v. *Dividend Mutual Insurance Co.*, 2 *Kern.* 81.)

In this case, I think the condition was waived.　The assured was absent from home when the fire occurred. C. C. B. Walker, who is named in the policy as having some interest in it, caused due notice of the fire to be given immediately after such fire, by the defendants' agent at Corning, where the premises were situated.　The fire occurred on the 20th of May, 1868.　On the 10th of June, afterward, some twenty days after the fire, the defendants' general agent and adjuster of losses, with one of

Owen *v.* Farmers' Joint Stock Insurance Company.

the directors and a member of the executive committee, came to Corning to look at the plaintiff's loss, with a view to the settlement of such loss. And on the 1st of July said agent was again at Corning, and stated to Walker that he came to adjust the loss; and being told by him that the plaintiff was absent, and that the proofs of loss had not yet been prepared, said it would make no difference; that the proofs could be made up and sent when the plaintiff returned. Nothing was said by the agent, at this time, intimating a purpose to contest the claim. Walker, the defendants' agent, says: "It was then understood that I was to wait until owner returned." The proofs were accordingly prepared, afterwards, as soon as the plaintiff returned home, were served or mailed at Corning on the 14th of August, and were returned by mail, in an envelope post marked the 26th of August. By the evidence, they were received as soon as the 16th of August, and were there kept ten days before they were returned, when, for the first time, the defendants advised the plaintiff, by Walker, that they intended to contest the claim.

These facts constitute, I think, a distinct recognition of the liability of the defendant for the loss, after the expiration of the ten days for the service of the preliminary proof. This is sufficient to establish a waiver of such proof within the ten days. (*Post* v. *The Etna Insurance Co.*, 43 *Barb.* 365. *Bumpstead* v. *Dividend Mutual Insurance Co., supra.*)

Peake was the general agent, and his acts were binding, and he could make such waiver. (*Sheldon* v. *Atlantic Insurance Co.*, 26 *N. Y. Rep.* 460.) The defendants' witnesses, Peake and Conger, establish that they were in Corning on the 10th of July and examined into the facts relating to the fire, and reported to the executive committee that the fire was fraudulent, and the committee then resolved to contest the same, on that ground. This

was after the expiration of the ten days, and the fact that the defendants then put their resolution to contest the claim upon other grounds than the omission to furnish the preliminary proof, is a waiver of that ground of defense. (*Clark* v. *New England Insurance Co.*, 6 *Cush.* 343. *Underhill* v. *Agawam Insurance Co.*, *Id.* 445. *Etna Insurance Co.* v. *Tyler*, 16 *Wend.* 385, 401. *Bumpstead* v. *Dividend Insurance Co.*, *supra.*)

The next objection urged in the motion for a nonsuit, that Charles Walker and Austin Lathrop were not made parties, is not well taken. It does not appear that they had, as a firm, any interest in the policy. The answer setting up such interest is not proved. Charles C. Walker claimed to have some interest in the policy, but there is no allegation of such fact in the answer. It is not claimed that he, as an individual, had any such interest. It is asserted that Charles C. B. Walker and Austin Lathrop were partners, and that they, as such partners, were the true owners and holders of such claim upon said policy.

By section 148 of the Code, this objection for defect of parties is waived; but another answer is that C. B. Walker has put in no separate claim to any interest in said policy, has given no notice to the company of any separate claim or interest in said policy, and if he has any rights and equities, these exist also between himself and the plaintiff. The provision in the policy is, that "loss, if any, shall be payable to Walker & Lathrop, and C. C. B. Walker and the insured, as their interest shall appear." Under this provision the loss was to be paid to the parties named, according to their interest in the premises covered by the policy, as it should appear when a fire occurred. It does not appear that any of these parties, except the plaintiff, has any interest in such premises. C. C. B. Walker, it is true, claims some interest in the policy, under some judgment against Owen; but no such judgments were proved, and no interest in said policy appears to exist in him. If

he sought to make any claim under the policy against the defendant, he was bound to give specific notice of such claim, and state its value and extent, that it might appear to said company as it existed at the time when said fire occurred. The motion for nonsuit was therefore properly denied, so far as these grounds are concerned.

The defendants also claim that the court erred in refusing to nonsuit the plaintiff at the close of the evidence, for the reason that the statement, in the application made by the plaintiff for the purpose of procuring the insurance, that there was no incumbrance on the property insured, was a warranty on the part of the plaintiff that there was no incumbrance on the said premises, whereas the said property was in fact, at the time of such application, incumbered by three judgments. The policy contains a provision that it is made and accepted in reference to the terms and conditions annexed, which are therein declared to be part of the contract, and are to be used and resorted to in order to determine the rights and obligations of the parties, in all cases not therein otherwise provided for. Among the conditions annexed to the policy is one, the second, declaring that all applications for insurance shall be in writing, according to the printed forms prepared by the company, and must specify, among other things, whether the property is incumbered, and if so by what, and to what amount. In the first section it is provided that the applicant is responsible for the truth of the statement in relation to certain matters in the description and use of the property, and in relation to the ownership of the property, incumbrance on the same, and other insurance on the property; and that the applicant is thus bound, whether he signs the application or not. And the third section of said conditions provides "that if any person effecting insurance in the company, shall make any misrepresentations or concealment touching the risks to be assumed, then the insurance shall be void."

The application in this case contained the following statement: "The incumbrance on this property is 0000." The learned judge at the circuit held that this was a representation and not a warranty, and submitted the question to the jury whether such representation was false and fraudulent. This, I think, was error, so far as related to the question of fraud. In any view of the statement, the applicant was responsible for its truth, and if it was false in fact, the policy, I think, was void by the express terms of the contract. (*Angell on Ins.* 180. *Burritt* v. *Saratoga Ins. Co.*, 5 *Hill*, 188.) But the question remains for consideration, what was the statement in fact intended to be, and what was its fair construction? It was taken and confessedly written by the defendants' agent, and the plaintiff's name was put to it by such agent. It is a palpable imposition upon the plaintiff if the policy is to be avoided by the acts of the defendants' agent, under the circumstances as detailed in the evidence by him and the plaintiff. This policy was taken at the instance of such agent, and not at the request of the plaintiff. The policy was taken in exchange for one held by the plaintiff, taken by such agent, in the Lorillard Insurance Company.

The representations as to incumbrance, as detailed by both parties, related to a mortgage on the premises existing when the previous policy was taken, which was spoken of between them, and which the plaintiff said he was about paying off. It does not appear that anything was said by either of the parties about any incumbrance or lien by judgment on the property, when inquiry was made about incumbrances, or anything suggesting any necessity or occasion to speak about judgments. I think, therefore, that the inquiry suggested in the application in respect to incumbrances on the premises was in fact, and should be in law, limited to mortgages or incumbrances creating a specific lien on the land. I do not think the inquiry necessarily called upon the plaintiff to say anything about

the judgments. If the defendants desired to know whether the premises were subject to the liens of any judgments against the insured, they should have asked that question, and distinctly called the attention of the plaintiff to the subject, in the application. When asked if the premises were incumbered, I think the answer need go no farther than to specify all specific liens upon the land by mortgage, contract to sell, charges upon the property by will or otherwise, or certificate of sale by sheriff, if the premises had been sold on execution upon any judgment. Before such sale, a judgment was nothing more than a general lien upon all the real estate of the judgment debtor. Such judgment could not affect the real estate till the personal property of the debtor was exhausted, and the defendants may have personal property sufficient to satisfy these judgments. And the plaintiff testified, also, that he had eleven other village lots in the village of Corning, where he resides, which he still owns, upon which said judgments were also a lien.

The insurance company in such case, I think, might very reasonably desire to know what specific liens or incumbrances then existed upon the property, because such liens or incumbrances would be also insurable, and the company might, in this view, very properly desire to know what other insurance might be taken or put upon the insured property by other parties, thereby increasing the risk and liability by fraudulent fires. But judgment creditors having no specific lien upon any particular portion of the debtor's property, would be little disposed, ordinarily, to insure any of such property if they had in fact any insurable interest therein. In this view of the statement that there was no incumbrance on the property, whether viewed as a warranty or as a representation, there was, in fact, no intentional concealment or misrepresentation, and the refusal of the judge to nonsuit was not erroneous, and the verdict of the jury for the plaintiff was right.

No error, injurious to the defendants, at least, was committed by circuit judge or the jury. The finding of the jury that there was no fraudulent representation was clearly right, if no substantial misrepresentation was in fact made. Clearly none was intended. Upon the whole case I think the recovery right, and that the judgment should be affirmed.

Judgment affirmed.

MONROE GENERAL TERM, September 6, 1869. *E. D. Smith, Dwight* and *Johnson,* Justices.]