Gilmore, C. J.
There are two objections urged against the charge of the court. The first is as to the proofs of loss, ‘and the alleged waiver thereof by the insurer; and the second is as to mere negligence of the watchman and those having charge of the boat, being a peril insured against.
1. The boat was lost by sinking, on the 26th of July, 1871. At this time she was lying up, unused, in Glass Bayou (a fit place), half a mile from Vicksburg. Captain Parisot, the owner, was also the owner of a number of other steamboats, and largely engaged in the business of' running them. He was absent on a trip up the Yazoo river at the time of the loss, and had no personal knowl *39 edge on the subject. On the day the boat sunk, Mr. Jones, who had charge of Parisot’s business at Vicksburg, notified Howe & Carroll, of St. Louis, the agents through whom the insurance was effected, of the loss, and in due time received word through them, that the insurance company would send its adjuster to Vicksburg /to investigate the matter.
On the day the boat sunk, James Hill, one of the watchmen on the Calumet, and Peter Donohoe, a watchman on the Roma Wheeler, which was lying up close to the former when she sunk, made protest of the loss under oath before-a notary, public. On the 16th of August, three weeks after the loss, Captain Palmer, who is a marine adjuster by profession, arrived at Vicksburg, to investigate the loss in behalf of the insurance companies interested. He was shown the protest above spoken of, and took a copy of it. He made but one objection to it, which was that it failed to state the cause of loss. Notwithstanding this defect, he and Captain Parisot, who, in the meantime had returned, proceeded to investigate the matter together. They went to where the wreck lay, and examined it, and made inquiries of all whom they met as to the circumstances attending the sinking, but failed to ascertain the cause of the loss. They did not see Hill, one of the protestors, for he had, in the meantime, been paid off and left for parts unknown, and Donohoe says they did not see or inquire of him.
In his testimony on the trial, Captain Palmer said: “ Captain Parisot and I read the protest over together at the wharf-hoat; I told him that the protest stated no cause for the loss; he asked me what the companies would do under the circumstances; I told him I did not think they would pay, as he had shown no cause for the loss, and it must have been from unseaworthiness or negligence, against which the companies did not insure; he said he thought the companies ought to pay, as he was an old customer of theirs, and had paid out a good deal of money on *40 insurance; I told Mm that I would write and inform Mm whether the companies would pay.”
Mr. Hartwell, president of the insurance company, in Ms testimony, says : “ He (Captain Palmer) reported just about what he testified to on the stand. He spent all the time that was necessary to find out the facts of the loss. We decided on Ms report, and in the absence of further proof, that we were not liable for the loss. We did not correspond with Captain Parisot directly. He never addressed a letter directly to the company; all the correspondence was done through his agents, Howe & Carroll, of St. Louis. Think we informed them that the company would not pay the loss, soon after Captain Palmer’s return.”
Captain Palmer admits, iu his testimony, that he did not, after he had laid the matter before the company, write to Captain Parisot, as he had promised to do.
Captain Parisot, in his deposition, says: “After Mr. Palmer’s visit, I wrote again to the agents (Howe & Carroll), and stated all the facts, as near as I could. They answered that they (the insurance company) would 'do nothing for me.”
On the trial, the plaintiff below relied for recovery, solely on the ground that the loss had been caused by a sudden storm of wind that occurred between three and five o’clock on the morning the boat sunk. This was not stated as the cause of loss in the protest, and the question was whether proof of this proximate cause of loss had been waived by the company.
The court, in its charge, fairly stated the case, and left the question of fact to the jury, and it was found in the affirmative.
It is objected that this finding is against the evidence.
We do not think so. The requirement of preliminary proofs of loss is a formal condition, inserted in the policy solely for the benefit of the insurer. That such proofs may be waived, in whole or in part, is well settled as a legal proposition. The waiver may be by the direct action of the insurer, or by his general agent, by virtue of his au *41 thority. Post v. Ætna. Ins. Co., 43 Barb. 351; Phillips v. Protection Ins. Co., 14 Mo. 220. The waiver may be express, or it may be inferred from the denial of obligation by the insured, exclusively for other reasons. Owen v. Farmers’ Joint Stock Ins. Co., 57 Barb. 518 ; Beatty v. Lycoming County Mut. Ins. Co., 16 P. F. Smith, 9.
Objections to the preliminary proofs as to loss will be considered waived if not made when the proofs are presented, and the insured is informed by the underwriter that the claim is rejected entirely on other grounds. Globe Ins. Co. v. Boyle, 21 Ohio St. 119.
The conduct of the adjuster, who was the agent of the insurer, when he visited Vicksburg, was susceptible of two constructions, either or both of which - the jury may have found in a way favorable to the insured. It may have found that, iu the opinion of the adjuster’, the loss had been occasioned by the unseaworthiness of the boat, and that, for this reason, the insurer would not pay; or the jury may have found, from what was said between the adjuster and the insured, that it was understood between them that the adjuster would submit the sufficiency of the protest to the insurer, and if it refused to pay on the ground that it did not state a cause of loss, he would write to the insured and advise him of the fact, iu time to enable him to extend the protest within the thirty days. If the refusal to pay was placed on the latter ground, it was the duty of the insurer, even in the absence of an express promise to do so, to have pointed out the defect, and advised the insured that it refused to pay on that ground. Common fairness and candor would have required this. Wyman v. People’s Fquit. Ins. Co., 1 Allen, 301; Peacock v. The New York Life Ins. Co., 20 N. Y. 293. And a failure to do so is a waiver of the right to require such proofs on the trial. Walker v. Metropolitan Ins. Co., 56 Maine, 371. If this is the law in the absence of an express promise to write and advise the insured, it would have been practicing a deception upon him not to write and advise him, after promising to do so, as was done by the adjuster, acting in *42 behalf of the .insurer, if it placed its refusal to pay on the defect in the protest; and, as it ought not to be presumed that the insurer intended to mislead or deceive the insured, the failure to so write and advise him may have been found by the jury to have been a waiver of the defect in the protest. But, in addition, the jury may have found from this, in connection with the testimony of the president of the insurance company, that it decided not to pay on the ground that the loss was occasioned by the unseaworthiness of the boat, and if the refusal to pay was placed on this ground, it was a waiver of the defect in the protest. Protection Ins. Co. v. Harmer, 2 Ohio St. 452. The legal effect of the finding of the jury on this point, was, to render the condition of the policy requiring proof of loss inoperative.
2. In the second place, it is claimed that the court erred in charging that mere negligence of the watchman and those having care of the boat was a peril insured against.
The clause in the charge that is complained of is this: “ If she was in such seaworthy condition, and sufficiently manned for such a boat so lying up, and the loss was occasioned by the mere negligence and want of proper care of her watchman and those having the care of her, the plaintiff will be entitled to recover, if he has proved all other necessary facts, for such negligence is a peril insured against.”
The court had previously charged that, where a boat sinks without any known cause, the law presumes that such sinking is caused by unseaworthiness of the boat, and that, if the loss arose from ordinary wear and tear, or from unseaworthiness, or from encountering an ordinary peril of the river, the plaintiff could not recover, for, as to these, he was his own insurer; that the burden was on the plaintiff to prove, by a preponderance of evidence, that the boat -was seaworthy within the requirements for .such boats; that she was tight and sound, and her seams properly caulked, and sufficiently found in tackle and appurtenances thereto, and completely manned and duly provided in all *43 things and means necessary for the safety of the vessel; and that such a state of things had to be maintained by the plaintiff during the continuance of the risk. Then comes the clause above quoted, which was immediately followed by this language:
“ But if the negligence consisted in allowing the boat to become unseaworthy, and she was lost thereby, there can be no recovery.
“ The boat need not have been sufficiently seaworthy to perform a voyage, but it must have been for her preservation under all ordinary circumstances while tied up during such period of non-user, and if she encountered a peril insured against which she would have safely resisted if seaworthy, but in consequence of being unseaworthy was sunk by encountering a peril insured against, then the plaintiff can not recover.
“And further, if the boat was seaworthy when laid up, hut thereafter her seams were suffered to become open by exposure, which the plaintiff failed to have properly caulked, and she was not in a safe and seaworthy condition requisite for her safety when tied up, then the plaintiff can not recover.
“ The boat must have been kept in such condition as to be reasonably sufficient to withstand the ordinary perils attending a boat so laid up at that time and place. If she was not so kept, the plaintiff can not recover, no matter what peril she may have encountered. If she was, and encountered wind or waves, by which she broke her spars, was driven against the bank and careened so as to be thrown on her side so as to take in water at her seams which were far enough above the water line so as not to endanger her safety while lying up under ordinary circumstances, and sunk in consequence thereof, then the plaintiff can recover if he had provided and kept at the boat a force of men sufficient to take care of the boat under ordinary perils, whether all such men were directly in his employ and pay or not.”
The clause in the charge, that is complained of, lays *44 down the law correctly on that point, and when taken in connection with the other parts of the charge, could not have misled the jury. If all the “other material facts” required by the charge — all of which were controverted— had been proved by a preponderance of testimony, and the boat was lost by reason of encountering a storm of wind, the plaintiff was entitled to recover, notwithstanding, as was proved, one of the watchmen was asleep, and the other was on a neighboring boat, at the time the storm occurred, and that their negligence, in this respect, may have occasioned the loss.
“ In an action on a policy of insurance, it is no defense to show that the loss was occasioned by negligence in the agents .of the insured.” Perrin’s Adm’r v. Protection Insurance Co., 11 Ohio, 146.
In Busk v. The Royal Exchange Assurance Co., 2 B. & Ald. 73, the question for the opinion of the court was, whether the defendants were exempted from their liability for the loss, on the ground of its having been occasioned by the negligence of the mate. The act committed by the mate was lighting a fire in the cabin, and in the evening leaving the.ship, going on board of another lying contiguous, and remaining there all night.
In this case it was held that where the assured.had once provided a sufficient crew, the negligent absence of all the crew at the time of the loss was no breach of the implied warranty that the ship should be properly manned.
This doctrine is followed and approved in Walker v. Maitland, 5 B. & Ald. 171.
In this case the mate in charge of the vessel went to sleep., leaving the charge of the watch to one of the seamen, another having the helm; and soon after the mate went to sleep the whole of the watch on duty went to sleep. The vessel, being left to the mercy of the waves, ran ashore and was beaten to pieces.
In the case of Henderson v. The Western Marine and Fire Insurance Co., 10 Rob. (L. A.), 164, it was held that the *45 underwriters are answerable for any loss occasioned by tbe negligence of those in charge of the property insured.
These authorities fully sustain the clause in the charge here complained of. It was, in effect, saying that where a vessel is lost, by one of the perils insured against, the insurer will be liable, although the loss might have been avoided by the exercise of proper care of those in charge of the vessel at the time of the loss.
3. It is urged that the verdict is against the evidence, and that, on this ground, the court erred in overruling the motion fora new trial. Aside from the waiver of the proof of loss, which has been disposed of, the questions of fact that were most severely contested on the trial, were whether the proximate cause of the loss of the boat was a storm of wind, as contended by the plaintiff, or by the unseaworthiness of the boat and negligence of the watchmen, as contended by the-defendant. Tbe depositions of many witnesses were taken at Vicksburg, which were read, and other witnesses orally examined, on both sides, on these controverted points. The testimony was conflicting. The fact that the action was not brought for some eighteen months after the loss-occurred, and the further fact that the defendant did not hear that it was claimed that the loss was occasioned by a storm, until after the action was brought, caused the latter to doubt the good faith of the plaintiff in bringing the action, and this question was contested, on both sides, with much earnestness. It is sufficient to say that, after a careful ctinsideration of the evidence, we are unable to say that the verdict is contrary to it.

Judgment affirmed.