# THE AMERICAN FIRE INSURANCE COMPANY vs. WALTER B. BROOKS and W. H. BOSLEY, RECEIVERS.

*Fire Insurance—Authority of Agents—Failure of Broker to Pay Over Premium Collected by Him—Cancellation of Policy—Notice.*

A broker who is employed to obtain a policy of insurance is the agent of the assured and not of the insurer, although he asked the assured to take out the policy, but his agency is not continuing and ceases upon the delivery of the policy.

If the broker undertakes to act outside of his original employment to effect the insurance, the question whether he is the agent of the assured or of the insurer depends upon the circumstances of the case, and his authority to act for either party must be proved by the one who seeks to bind the other by his acts.

This principle is not affected by a provision in the policy that "in any matter relating to this insurance no person unless duly authorized in writing shall be deemed the agent of the company," because, under the general law of agency, the company is bound by the acts of a party whom it has expressly or impliedly authorized to act for it.

When a broker is originally employed only to obtain a policy of insurance and is not afterwards directed by the assured to obtain a renewal, and a renewal receipt is sent to the broker by the insurer who intends that he shall deliver the same and collect the premium, then payment to the broker is payment to the company, and the validity of the insurance is not affected by the fact that the broker fails to remit the premium to the company.

The conditions upon which, according to the terms of the policy, the right to cancel the same depend must be strictly performed.

The policy in this case reserved to the insurer the right to cancel the insurance by giving five days' notice. The assured were the receivers of the Gay Co. and resided in Baltimore. The property insured was situated in North Carolina. The insurer on November 29 wrote a letter addressed to the Gay Co. in North Carolina, stating that unless the premium was paid on or before December 6, the policy "will be cancelled." The premium had in fact been paid to an authorized agent of the insurer. The letter was received by an employee of the receivers on December 5. The entry of cancellation was made on the books of the insurer on Dec. 6, but the assured were never di-

rectly notified that the policy had been cancelled. *Held*, that this attempted cancellation was a nugatory act.

When the insurer sends by mail a notice of the cancellation of the policy the receipt of the same must be shown.

Appeal from the Court of Common Pleas. At the trial below the defendant asked the Court to instruct the jury that the policy sued on was rightfully cancelled before the occurrence of any loss, and also that there was no legally sufficient evidence to establish the liability of the defendant under the policy. The trial Court (HARLAN, C. J.), rejected these prayers and also the prayers offered by the plaintiffs (except one as to the measure of damages), and gave to the jury the instruction set forth in the opinion of the Court. The jury returned a verdict for the plaintiffs for $1,140.54.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Robert H. Smith* and *Alfred S. Niles* for the appellant.

Appellant contends that the Courts should have instructed the jury that the policy was properly cancelled before loss occurred, and that their verdict should have been for the defendant. There was no condition precedent to cancellation that the defendant should pay the plaintiffs any money on account of unearned premiums. It is only " premiums *actually paid*" that must in any case, be returned ; and here there were no premiums actually paid. " The defendant had never actually received anything and therefore it had nothing to return." *Stone* v. *Franklin Ins. Co.*, 105 N. Y. 543 ; *Little* v. *Insurance Co.*, 38 Ohio, 110. The receipt in the policy can be contradicted so as to show that no money ever actually passed. *Bergson* v. *Insurance Co.*, 38 Cal. 546 ; *Biddle on Insurance*, sec. 1128. To hold that there was any money actually paid to the Insurance Company it is necessary to hold that Coale was the agent of the defendant to receive the payment. Coale says himself, that he never was the agent of the defendant Company. The policy says that he was not to be deemed the

agent of the company *in any matter relating to this insurance*, unless he had written authority.

The Court of Appeals of New York decided in a case almost identical with this, that the broker was not the agent of the assured, and that payment to him of the premium did not bind the company. *Wilbur* v. *W. C. F. Ins. Co.*, 122 N. Y. 439 ; see also *Pottsville F. Ins. Co.* v. *Minequa Springs Imp. Co.*, 100 Pa. 137 ; *Atlantic Ins. Co.* v. *Carlin*, 58 Md. 336, 342, &c.

Even had the money been paid to the company direct, a refunding of the unearned premium would not have been a condition precedent.  Under the terms of some policies it is such a condition precedent.  See *Bingham* v. *Insurance Co. of North America*, 74 Wis. 498 ; *Little* v. *Insurance Co.*, 38 Ohio, 110 ; *Ætna Ins. Co.* v. *Weissinger*, 91 Ind. 298 ; *Hopkins* v. *Phœnix Co.*, 78 Iowa, 344.  This policy is *not one of that kind*.  This policy provided (1) that the company may cancel the policy ; (2) that the insured may get his unearned premiums returned whenever, *after cancellalation*, he surrenders to the company his policy.  To say that the payment of unearned premium is a condition precedent under *this* policy, because it has been decided to be such a condition under *another* policy, containing an altogether different clause, does not seem to us a sound argument.  The Courts have decided that, under such a clause as is now before the Court, repayment of premium is *not* a condition precedent.  *Insurance Co.* v. *Buchheiser*, 50 Ohio St. 546 ; *Newark Fire Insurance Co.* v. *Sammurs*, 11 Bradwell, 230.

The requirement of notice was met by the defendant. The only man who appears in the matter, when the " insured " present their claim for loss, knew of the contemplated cancellation, as he testifies, " probably " at least five days before it was done.  He knew it *certainly* one day before it was done, and in his letter then written makes no protest against the company's right to do it.  This letter from the company, and a copy of the answer were

shown to Mr. Bosley, who was not only one of the receivers, but also one of the trustees.   Mr. Bosley himself testifies that "some considerable time before the fire" Barton told him that the company had cancelled this policy on account of failure by Coale to pay over the premiums. Transactions with reference to the cancellation of an insurance policy are to be construed reasonably and fairly and in accordance with the evident understanding of the parties at the time.   A notice is sufficient, even although not given strictly within the time specified, if the time afterwards expires and if such notice is accepted.   *Emmott* v. *Insurance Co.*, 7 R. I. 562 ; *Hopkins* v. *Phœnix Ins. Co.*, 78 Iowa, 346 ; *Hartford F. I. Co.* v. *Reynolds*, 36 Mich. 508. There was no necessity after notice that the company *would* cancel to send another notice that the company *had* cancelled.   *Bergson* v. *Insurance Co.*, 38 Cal. 541.

The question as to whether notice of cancellation of a policy should be given the mortgagee named in the policy, as well as to the mortgagor, is a question differently decided in the only two cases which we have found directly bearing upon that point.   *Lattan* v. *Royal Ins. Co.*, 45 N. J. L. 453 ; *Muller* v. *South Side Fire Ins. Co.*, 87 Penn. St. 399.   But this decision is not material here because Barton must be taken as duly authorized agent of the "insured" (*i. e.*, both mortgagor and mortgagee, according to their respective interests), and notice to a general agent of plaintiffs as to insurance business is the same as notice to the plaintiffs.   11 *Bradwell*, 233 ; 87 *Penn. St.* 404 ; *Stone* v. *Franklin Ins. Co.*, 105 N. Y. 547; *Harmann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 415.   The assignee of the mortgagor, Bosley, and the mortgagee, Bosley, being one and the same person, notice to him was notice to both mortgagor and mortgagee.

If the Court should not have instructed the jury for defendant, it ought at least to have left to the jury the questions :   1. Whether Barton was agent of the insured.   2. Whether Bosley, receiver and trustee, had not received no-

tice of cancellation in proper time ; or notice in which he acquiesced,

*Archibald H. Taylor*, for the appellees.

It has been said that there is a conflict of cases as to whether or not payment of the premium to the broker is payment to the insurance company.    The cases in reality all concur, however, that the Courts determine this question and the question of the shifting agency upon the circumstances of each particular case.    The case relied on by the appellant, *Wilber* v. *W. C. T. Ins. Co.*, 122 N. Y. 443, is one of the best illustrations of this doctrine.    There, unlike this policy, the clause expressly stated that " the broker procuring the policy or the renewal" was " to be deemed the agent of the assured."    The Court there expressly says : " Now, while the defendant *could* have waived the benefit of this provision of the policy, or *might have adopted* such a course of action which would have estopped it from claiming the benefit of it, it did neither."    The Court expressly refers to the case of *Herman* v. *Niagara*, 100 N. Y. 415, where it had adopted the rule of the Supreme Court of the United States, that any such limitation of the broker's power was expressly limited to the inception of the contract, and that afterwards it depended upon the acts of the parties, whose agent he became.    See also *Bodine* v. *Ins., Co.* 51 N. Y. 117 ; *Train* v. *Holland Purchase Co.*, 62 N. Y. 598.

This case is the same as *Arthurholt* v. *Fire Ins. Co.*, 159 Pa. 1.    It expressly overrules *Pottsville Ins. Co.* v. *Mimequa Springs*, 100 Pa. 137, cited by the appellant and all similar cases.    It reaffirms *Lebanon Co.* v. *Erb*, 112 Pa. 158, and *Lebanon* v. *Horver*, 113 Pa. 591 ; *Pittsburg Boat Yard Co.* v. *Ins. Co.*, 118 Pa. 428, where the doctrine had been already announced.    The exact case, and probably the latest on the subject, is *Wytheville Ins. Co.* v. *Teiger*, 90 Va. 277. Here the premium was paid to insurance brokers, who had before " placed policies of the defendant company and received the premiums."    From this, " as just said," the

Court found them " agents " of the company, and decided that payment to these brokers was payment to the company.

But there was written authority amply sufficient, in this case, to authorize the broker, Coale, to collect this premium, when he exhibited to Mr. Bosley the letter dated August 1st, 1892, and the receipt for the renewal premium No. 1397. Reading the two together, was there not plain, ample authority in writing to justify Bosley in paying to him ?

*As to the cancellation of the policy.* The cases say that the notice must be unconditional, unequivocal, to the effect that *cancellation is made,* not *will be made. Gardner* v. *Standard Ins. Co.,* 58 Mo. App. 611 ; *May on Fire Ins..* sec. 672 ; *Wood on Fire Ins.,* sec. 113. Now, the case in 58 Mo. App., above quoted, expressly decides that information coming through a third person to the insured, is no notice to him. He is not bound to act upon it. The information which reached Mr. Bosley long after the act of cancellation had taken place, was that conditions of the notice had been effectually satisfied and complied with by Mr. Barton. But Barton, the miller at Suffolk, is certainly no agent of the receivers doing business in Baltimore, to receive notice of cancellation of a policy. He had no relation whatever to the trustees under the mortgage, who were adverse parties to the receivers. It has been expressly decided that these mortgagees are the parties to be notified. *Lattan* v. *Royal Ins. Co.,* 45 N. J. 453 ; *Muller* v. *Southside Ins. Co.,* 87 Pa. State, 399 ; *Hanover Co.* v. *Brown,* 77 Md. 76 ; *National Fire Ins. Co.* v. *Crane,* 16 Md. 286 ; *Wood on Fire Ins.,* sec. 113 ; *Coates* v. *Fire Ins. Co.,* 51 Md. 172 ; *May on Fire Ins.,* sec. 67, F.

PAGE, J., delivered the opinion of the Court.

This is an action on a policy of insurance issued by the appellant to Walter B. Brooks and W. H. Bosley, receivers of the Gay Manufacturing Company, upon a steam saw-mill and machinery situated at Bosley, Gates County, North

Carolina.   At the time of its issuance Archibald H. Taylor and William H. Bosley, trustees, held a mortgage upon the property, and the policy contained a provision by which the "loss, if any," was made payable to them, "as their interest may appear."   This suit is now prosecuted for their use and benefit, by the receivers, in pursuance of an order of Court requiring them to make collection of all unpaid claims arising upon policies of insurance on the property of the company, which had been destroyed by fire.

Policy No. 5450, being that which forms the subject of this suit, was placed, through the agency of George B. Coale and Son, brokers, of Baltimore City, at the request of Mr. Bosley.   Mr. Coale states, in his testimony, that the policy was forwarded to him by Mr. Kelley, the general agent of the company, and was delivered by himself to the receivers ; that he collected the premum and paid it to the company, less his commissions, and that he was never notified by it not to collect the premium.   He further testified that he informed Mr. Kelley who Messrs. Brooks and Bosley were and what business they were engaged in.   The policy was dated the 21st August, 1891, and ran for one year from the 20th August.   On 1st August, 1892, a renewal receipt was sent by Mr. Kelley to Coale and Son.   In his note transmitting it Mr. Kelley states that he forwards to the Coales, "according to order received," but there is no evidence that the plaintiffs gave such an order, or that it was given by the Coales, as a consequence of any conversation had with them or of any act for which they were responsible.   Mr. Coale delivered the receipt to the receivers and received from them a check for the premium, but, by reason of illness, he failed to remit the money to the company. On the 6th of October the general agent of the company wrote to the Coales :   "We seem to be without your remittance for August on Policy No. 5450, and will thank you for the same ;" and again, on 3rd November: "Premium of $82.50 is still due on Policy No. 5450, &c., and unless same is paid we, of course, will consider our liability

as having ceased after receipt of this notice." Neither of the receivers nor the trustees nor any officer of the Gay Company was at any time informed, before the fire, of these letters or of their contents. On the 29th of November Mr. Kelley wrote to the Gay Manufacturing Company directing his letter to Bosley, Gates County, N. C. The following is a transcript of this communication:

PHILADELPHIA, Nov. 29th, 1892.

GAY MANUFACTURING COMPANY,

*Bosley, Gates Co., N. C.*

GENTLEMEN : Under date of 20th August last, at the request of your agents, Messrs. George B. Coale & Sons, of Baltimore, we renewed our policy, No. 5450, by issuing Renewal Receipt No. 1397, covering $1,500 on your sawmill plant at Bosley, the premium agreed upon being $82.50, which has not yet been paid to us, notwithstanding we have repeatedly called the matter to your attention through your agents, Messrs. George B. Coale & Son, 25 South St., Baltimore, Md., and we now write to advise you that the policy will be cancelled on our books for non-payment of premium on December 6th, *proximo*, in accordance with the terms of the policy, unless payment be made before that date ; after which date no further liability will be recognized, and will look to you for the unearned portion of premium for the time insurance has been in force, viz., August 20th to December 6th, 108 days ; amount earned, $24.41.

Yours very truly,

WM. B. KELLY,<br>*General Agent.*

This letter, thus addressed, finally came into the hands of George L. Barton. Barton's relation to the receivers seems to be somewhat uncertain. He was located at Suffolk, Va., about twenty-five miles by rail from Bosley, and had charge of the mills at both places. He signed his name as " manager," but Mr. Bosley says that was a " self-constituted position." He was, however, in charge of the

business at both places, and was representing the receivers there, if anyone was. The date when he received Mr. Kelley's letter does not clearly appear; but probably, it was the fifth day of December, for on that day he wrote to Mr. Kelley: " Your favor of November 29th, addressed to our company at Bosley, Gates Co., N. C., *has just* been received at this office." In this letter, Barton expresses surprise that the premium had not been paid on the renewal, as Coale & Son had received it promptly, and concludes with saying: " We do not wish to lose your good company on our list, and assure you, you shall receive the premium, which we did not know has not been paid. As soon as we hear from Coale & Son we will write you again upon the subject." Not having received the premium from the Coales, on the 6th of December, Mr. Kelley caused to be made on the books of his company certain entries, which, in that office, were understood to mean the policy was cancelled, though that was not written in words. On the third of June the property was destroyed by fire. It does not appear that either of the receivers or trustees was informed of this correspondence, or of the entries on the books of the company, except that before or after the fire Barton told Bosley that the company had cancelled one of their policies, because Coale had not paid the premium; and that, he (Barton) had notified the company they would be responsible for it. Bosley says this conversation took place " some time " before the fire; but Barton recollects talking the matter over with him after the fire, but could neither affirm nor deny that he had had such conversation before; but, whenever it was had, Barton showed Bosley the letter of the defendant's agent and his own reply. Later on, Barton, having obtained from the receivers authority, made out the proofs of loss, and on 28th July forwarded them to the company. Mr. Kelley replied on the 31st July; he returned the proofs, and assigned for so doing the following reasons: " Policy No. 5450 having been cancelled before the fire, by a notice to you, under

date of November 29th, 1892, acknowledged by you December 5th, 1892, and no premium consideration ever having been received on same, the papers having evidently been sent us in error.   The claim you make under Elizabeth City Policy, No. 4676, is in error, because the apportionment embraces Policy No. 5450, which has been cancelled as above stated.   The error is against yourselves, as the amount properly due in the settlement as apportioned to the valid Policy No. 4676 should be $821.51.   When you make your claim for this amount in proper form we shall be glad to recognize it under that policy, but no claim can be admitted under Policy No. 5450."

Upon this state of the proof, the Court instructed the jury, that if the defendant issued the renewal receipt and sent it to Broker Coale to be delivered to the plaintiffs, and it was accordingly done, and the premium was paid to Coale on said delivery, and the fire occurred, and the proofs of loss mentioned in the evidence were submitted to the defendants as required by the policy, the plaintiffs were entitled to recover, notwithstanding the money received by Coale was in fact not paid over by him to the defendants.

The appellant contends there was error in this instruction, because, 1st, the policy was properly cancelled, and 2nd, it ought to have been left to the jury whether Barton was the agent of the insured, and also whether Bosley, receiver and trustee, had not received notice of cancellation in proper time or notice in which he acquiesced "some considerable time before the date of the fire."   These contentions present views diametrically opposite to those underlying the Court's instruction.   The theory of the Court seems to be that, while there was evidence in the cause to enable the jury, if they believed it, to find the receipt of the the renewal premium by the appellant, there was none sufficient in law to establish a cancellation of the policy.

It appears to be well settled that where one engages another to procure insurance the person so employed is the agent of the insured, and not of the insurer, in all matters

connected with such procurement. *Hartford F. I. Co.* v. *Rennolds*, 36 Mich. 502 ; *Standard Oil Co.* v. *Triumph Ins. Co.*, 64 N. Y. 85., This rule applies to cases where the insurance has been effected through the medium of a broker, although the broker may have solicited the insured to take out the policy. Such solicitation only cannot constitute the broker the agent of the insurer, so as to bind the latter, for the acts, declarations or omissions of the former. 1 *May on Insurance*, sec. 124 A.; *Kings Co. F. Ins. Co.* v. *Swigert*, 11 Brad. (Ill. App.) 590. But when the broker's employment extends only to the procurement of the policy his agency is not continuing. It ceases when the purpose of his employment has been accomplished ; that is, upon the execution and delivery of the policy. *Grace* v. *Am. Cent. Ins. Co. of St. Louis*, 109 U. S. 278 ; *Hinkley* v. *Arey*, 27 Maine, 364 ; *Lohnes* v. *Ins. Co. N. America*, 121 Mass. 439 ; *Herman* v. *Niag. F. I. Co.*, 100 N. Y. 411.

If the broker undertake to do acts outside of such employment the question for whom he acts will depend upon the special circumstances of the case ; and if the assured or insurer relies upon such acts to bind the other party, the burden of proof rests upon him who seeks to bind the other thereby to prove his authority. In the absence of direct proof of actual authority, and where the effort is to bind the insurer, the insured may establish the agency by showing what acts the insurer .has permitted the broker to do, and that the act relied on ought reasonably to be inferred to be within the scope of the apparent authority implied from such acts. 2 *Wood on F. Ins. Co.*, sec. 420 ; *Smith* v. *Home F. Ins. Co.*, 47 Hun. 37 ; *Pierce* v. *The People*, 106 Ill. 23 ; *North Brit., &c., Ins. Co.* v. *Crutchfield*, 108 Ind. 518 ; *Kausal* v. *Min. Mut. F. Ins. Asso.*, 31 Minn. 17.

It is contended, however, that these principles do not apply to the case at bar, by reason of this provision contained in the policy, viz: " In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company." It is difficult, how-

ever, to perceive how this clause can be made applicable in this case. The purpose of the provision could not have been to take from the insurance company the power to appoint an agent by parol, and thereby in many cases to secure immunity from the consequences of its own acts. If the clause is to be so construed as that, although the company has expressly or by acts which warrant the implication, appointed an agent, yet it shall not be responsible for the conduct of such agent while acting within the scope of his real or apparent authority, unless such appointment is in writing, then the clause is a mere trap to ensnare the unwary policy-holder and a device by which an insurance company, for its own purposes, may abrogate and repeal the fundamental principle of the law of agency. The object of the insertion of the clause was to protect the company from the statements, knowledge and acts of persons connected with the procuring of the policy by the clear understanding of the parties to the contract that in any matter relating to such insurance no person, unless duly authorized in writing, shall be deemed its agent. *Wytheville Ins. and Banking Co.* v. *Teiger*, 18 S. E. R. 195 ; *Grace* v. *Am. Cent. Ins. Co. of St. Louis*, 109 U. S. 278 ; *Arthurholt* v. *Fire Ins. Co.*, 159 Pa. St. 7 ; *Insurance Co.* v. *Lee*, 73 Texas, 641.

In this case the uncontradicted evidence was, that the employment of Coale and Son by the insured extended only to the procurement of the policy. Their duty was, "to place the policy." This being so, when the policy was delivered, their functions were ended so far as the appellees were concerned. The policy was sent to Mr. Coale, and by him delivered to Mr. Bosley. To Mr. Coale was also sent the receipt for the premium, which he collected and remitted to Mr. Kelley, retaining his commissions. One year later the renewal receipt was forwarded to Mr. Coale ; and, when it was delivered, he again collected the premium. That it was intended by Mr. Kelley that Coale should collect the premium and remit to him, was left by the instruction to be determined by the jury. The course of dealing

between Coale and Kelley in relation to this and other pol-
icies, the enclosure to Coale of the renewal receipt, and
Kelley's letter of Oct. 6th, 1892 (in which he writes to
Coale, " we seem to be without your remittance," etc., and
" will thank you to send the same forward at once) ;" were
all before the jury and tended to prove what that intention
was.    If they found the intention was that Coale should
deliver the receipt and collect the premium, then payment
to him was equivalent to payment to the company.

It is also insisted that the policy was effectually cancelled
on the 6th day of December, and that the prayer is bad be-
cause it ignores that fact.    This position necessarily assumes
that the policy was in full force up to that date.    The can-
cellation is an alleged fact set up by the appellant and the
burden of proof is upon it to establish it.    *Runkle* v. *Cit-
izens' Ins. Co.*, 6 Fed. R. 143 ; *Mohr* v. *Ohio Ins. Co.*, 13
Fed. R. 74.

The right to cancel is reserved by a clause in the policy
to both parties.    It may be cancelled by the insured at his
own request, and by the company, " by giving *five days'
notice* of such cancellation."    If it shall be cancelled by the
company, the clause further provides that if the premium
has been paid, the "unearned portion shall be returned on
surrender of the policy," &c., " except that when the policy
is cancelled by this company *by giving notice*, it shall retain
only the *pro rata* premium."    These are conditions upon
which the right of the company to cancel rest ; they must
be strictly construed and strictly performed.    *Runkle* v.
*Citizens' Ins. Co.*, *supra*; *Lattan* v. *Royal Ins. Co.*, 45 N. J.
L. 453.    Five days' notice of the cancellation is therefore a
condition precedent, which must be complied with by the
company before it can perform the act of cancellation.    Here
the notice was, not that the policy had been cancelled, but
that unless the premium was paid on or before the 6th of
December, it " will be cancelled " on that date, and " no
further liability will be recognized " thereafter.    Now leav-
ing out of view, without expressing any opinion thereon,

the questions raised at the argument, growing out of the hypothetical character of the notice, and whether Barton's relation to the insured was such that a service on him was binding on the appellees, it is clear that the mere service of such a notice as this, if the premium had in fact been paid or the insured was chargeable with its receipt, would not *ipso facto* work a cancellation.    The policy would have to be cancelled by the insurer, by some act clearly indicating that he had done so ; (1 *Biddle on Ins.*, sec. 376) ; and this act could not be effectually performed, under the provision of the policy, until the five days had expired.    The entries upon the books of the company, by which the actual cancellation was shown, were made on the sixth day of December.    Is there, then, any evidence in the case tending to prove the five days had passed at that date ?    The notice was sent by mail, and in such case the receipt must be shown.    *Farnum* v. *Phœnix Ins. Co.*, 83 Cal. 246 ; *Mullen* v. *Dorchester M. F. Ins. Co.*, 121 Mass. 171.    It was addressed not to the insurer but to the " Gay Manufacturing Co.," and forwarded not to the residence of the insurers ,or of Barton, but to Bosley in North Carolina, twenty-five miles from Suffolk, where the superintendent of the receivers had his office.    The only evidence tending to prove the date when it reached the hands of any one connected in any manner with the receivers, is that contained in Barton's letter to Kelley of the 5th of December, in which he states that his letter containing the notice " has just been received at this office."    The act of cancellation was therefore made one day after the receipt of the notice by Barton.    This was not within the right reserved in the policy, and was an utterly void act.    Had the attempt to cancel been made later on another question would have arisen, upon which we have now no occasion to comment.    No other attempt was made ; and what was done, for the reason given, was nugatory and void.

As these views dispose of the claim that the policy was cancelled, we deem it unnecessary to discuss the many other

points raised in the argument in reference to the subject. Finding no error in the rulings of the Court the judgment will be affirmed.

*Judgment affirmed.*

(Decided March 25th, 1896).