# American Auto. Ins. Co. *v.* Watts.

## *Assumpsit.*

(Decided November 10, 1914. Rehearing denied December 15, 1914. 67 South. 758.)

1. *Insurance; Construction; Policy; Cancellation.*—A stipulation in an insurance policy, authorizing its cancellation, will be most strictly construed against the insurer, although the court cannot imply a meaning which the language does not warrant, if there is nothing equivocal in it.

2. *Same; Notice.*—Where the insured was out of town, and returned within about a month, and his automobile was burned within the three months period, and a registered letter notifying him of the cancellation of the policy was returned to the insurer at his request, the notice of cancellation was not sufficient, since the return of the letter at the request of the insurer, lessened the chances of receiving notice. (This is taing into consideration the provisions of the policy relative to cancellation and notice, the statutes of the United States, relative to the return of mail so requested, and the action of the insurer in requesting a return of the letter containing notice of cancellation.)

3. *Appeal and Error; Harmless Error; Evidence.*—Where the fact sought to be proven was a necessary conclusion from other competent evidence received without objection, the erroneous admission of other evidence as to that fact is harmless.

[American Auto. Ins. Co. v. Watts.]

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Action by S. H. Watts against The American Automobile Ins. Co., upon a fire insurance policy covering an automobile, which was burned. Judgment for plaintiff and defendant appeals. Affirmed.

PETTUS, FULLER & LAPSLEY and STOKELY, SCRIVNER & DOMINICK, for appellant. Contracts of insurance are construed according to the sense and meaning of the terms employed by the parties.—*Day v. Home Ins. Co.,* 58 South. 549; *Continental Casualty Co. v. Oggurn,* 57 South. 852. The provision of the contract as to cancellation is perfectly consistent with our laws.—Sections 2931 and 5308, Code 1907; rule 22 p. 1535. The policy was cancelled when notice was deposited in the mails, postage prepaid, addressed to the insured at the address given in the policy accompanied by a check for the unearned premium.—50 N. W. 47; 26 How. 422; 201 Fed. 516; 24 N. E. 699; 202 U. S. 344; 12 N. E. 45; 60 N. W. 337; *Cleveland W. Mills v. Sibert,* 81 Ala. 140.

W. M. VAUGHAN, for appellee. The insurer lessened the chances of the insured to receive the notice of cancellation by its request for a return of the letter containing the notice, which was properly returned under the United States postal law and regulation of 1913, p. 350, et sec. The courts strictly construe against the insurer the provisions governing cancellation.—*Continental Ins. Co. v. Parks,* 142 Ala. 657; 3 Cooley Briefs, 2791. To affect cancellation by letter, the letter must be actually received by the insured.—3 Cooley Briefs 2794; 1 Biddle on Ins. 304; 14 L. R. A. 147.

PER CURIAM.—This was an action on a policy insuring an automobile against loss or damage by fire for

one year, from September 3, 1912, to September 3, 1913. The defendant (appellant here) sought to escape liability on the ground that, prior to the alleged destruction of the automobile, the policy had been duly canceled, pursuant to the authority conferred by the following provision contained in it: This policy may be canceled at any time by either of the parties hereto upon written notice to the other party stating when thereafter cancellation shall be effected; the date of cancellation as fixed in such notice shall be the end of the policy period; if canceled by the company, the earned premium shall be computed and adjusted on a pro rata basis; if canceled by the assured, the earned premium shall be computed at short rates in accordance with the table printed hereon; notice of cancellation deposited in the United States mail, postage prepaid, to the address of the assured, as stated herein, shall be sufficient notice, and the check of the company or its duly authorized agent similarly mailed a sufficient tender of any unearned premium".

The defendant, by its secretary, wrote a letter to the plaintiff, dated May 20, 1913, giving notice of its intention to cancel said policy, stating that the cancellation shall be effective on the 22d day of May, 1913, at noon, that all liability of the company under the policy shall absolutely cease at that time, and that the check of the company for $4.47, the amount of the unearned premium under said policy, was inclosed. This letter, inclosing the check as stated, and addressed to the defendant at Selma, Ala., which was his address as stated in the policy, was registered in the post office at St. Louis, Mo., on May 22, 1913. In the upper left-hand corner of the address side of the envelope containing the letter were the words: "Return in five days to American Automobile Insurance Company, Pierce Building,

St. Louis, Mo." The letter was received at the post office at Selma on May 24, 1913. On that day a notice with the plaintiff's name on it and advising him that there was registered mail for him and for him to call for it was put in his box in that office, which was where he regularly received his mail. A second and similar notice was placed in the plaintiff's box on May 27th. There was nothing on either of those notices to indicate who was the sender of the registered mail referred to. The registered letter was not delivered to the plaintiff, or to any one for him, within five days after its receipt at Selma, and upon the expiration of that time was returned to the defendant. The plaintiff was not in Selma, which was his place of residence, when the letter was received there, and did not return or get the mail from his post office box until June 23, 1913. When his automobile was burned up about August 5, 1913, he had not been informed of the defendant's letter or of the import of it. Neither the letter nor the check nor any actual notice of the cancellation of the policy had been received by him at that time.

The pivotal question in the case is whether what was done by the defendant constituted a compliance by it with the terms of the stipulation which conferred on it the right to cancel the policy. It is well settled that such a stipulation is to be strictly construed, and that a cancellation of the policy by the insurer is not effected unless it strictly complies with the condition imposed upon it with respect to giving notice to the insured of the cancellation.—*Continental Insurance Co. v. Parkes,* 142 Ala. 650, 39 South. 204. Of course, there is no room for construction when there is nothing ambiguous or equivocal in the stipulation; and, when such is the case, a court cannot properly impute to the provision any meaning except the single one which the language used

plainly expresses.—*Day v. Home Insurance Co.,* 177 Ala. 600, 58 South. 549, 40 L. R. A. (N. S.) 652; *Continental Casualty Co. v. Ogburn,* 175 Ala. 357, 57 South. 852, Ann. Cas. 1914D, 377. But if the language used is susceptible of more than one interpretation that one must be adopted which is most favorable to the insured. —*Robinson v. Aetna Ins. Co.,* 128 Ala. 477, 30 South. 665; *Forest City Insurance Co. v. Hardesty,* 182 Ill. 39, 55 N. E. 139, 74 Am. St. Rep. 161; 19 Cyc. 656. The language of the policy was of the defendant's own choosing, and is to be construed most strongly against it. The court should lean against a construction which would limit or terminate the liability of the insurer.—*London Assurance v. Companhia De Moagens Do Barreiro,* 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113; 2 Page on Contracts, § 1122.

The questions then arise, Can the clause of the above-quoted stipulation which provides for depositing the notice of cancellation and the company's check for the amount of the unearned premium in the United States mail, postage prepaid, to the address of the assured, as stated in the policy, have more than one meaning, so that the terms of it may be complied with in more than one way? and, If there is more than one way of complying with such a requirement, was the method adopted by the defendant the one which was most favorable to the plaintiff? It is a matter of common knowledge that a letter may be mailed with or without registration, and that the envelope containing it may have or not have upon it a request of the sender that it be returned at the expiration of a specified time. If the sender's wish is to get back the letter, if it is not delivered within a specified time, this may be indicated by a return request; while if this is not what is sought, but evidence of delivery to the addressee is desired, this may be indicated, in the case of a registered letter, by a request by the sender to be

furnished with the addressee's receipt for it. That the selection of the method of mailing has an effect, in contingencies not unlikely to arise, upon the opportunity to be afforded to the person addressed actually to receive the letter is apparent in the light of postal regulations, established and promulgated pursuant to statutory authority, with notice of which the sender of mail is chargeable.—U. S. Rev. St. § 3936 (U. S. Comp. St. 1913, § 7418) ; Postal Laws and Regulations 1913, p. 350. The following regulations, set out in the publication mentioned, indicate how such opportunities of the addressee to receive a letter may be varied by the adoption of one rather than another and different method of mailing: "Sec. 632. 1. When the writer of any letter on which postage is prepaid shall indorse on the outside thereof his name and address, such letter shall not be advertised, but, after remaining uncalled for at the office to which it is directed the time the writer may direct or the Postmaster General prescribe, shall be returned to the writer without additional charge for postage, and if not then delivered, shall be treated as a dead letter. 2. The writer's card request for the holding of a letter for a period shorter than 3 days or longer than 30 days shall be disregarded.  *  *  *  4. Letters bearing the sender's return request shall be returned at the expiration of the time specified in the request, regardless of instructions from the addressee for the retention of his mail.

"Sec. 956. 1. Domestic registered letters and parcels which remain undelivered at either the office of their original address or the office to which they have been properly forwarded for the periods stated in paragraph 1, section 633, or such other period as may be named in the sender's return request, if any, not less than 3 nor more than 90 days, shall be marked on the face with the reason for their nondelivery, and be disposed of as here-

in provided. * * * 5. When a postmaster has good reason to believe that undelivered registered mail of domestic origin, bearing no time limit, can be properly delivered if it is held longer than the periods specified in the first paragraph of this section, he may indorse it 'Specially held for delivery' and retain it not longer than three months.

"Sec. 957. After a registered letter or parcel has been returned for restoration to the sender the addressee has no further claim upon it."

It is plain that, under these regulations, the defendant's indorsement on the envolope of the request that the letter be returned if not delivered in five days had the effect of depriving the plaintiff of the opportunity of receiving it, or of even ascertaining who was the sender of it, if for any reason it should happen that his mail was not called for within five days after the letter reached the postoffice at Selma, and had the further effect of depriving the postmaster of the right, which, but for such indorsement, he would have had, of retaining the letter for delivery for not longer than three months if he believed that it could be properly delivered to the addressee, who lived in Selma and had a post office box there. But for that request for a return of the letter 85 days sooner than it could have been returned, pursuant to a request, on a failure to deliver, the letter could have been held at Selma until after the plaintiff actually returned and got his mail, about six weeks before the automobile was burned. The existence of different methods of mailing a letter, each equally permissible, and of differences in the opportunities afforded to the addressee of actually receiving it, according as one or another method is adopted injects an element of ambiguity into a stipulation which in general terms calls for a deposit of the letter in the mail, postage prepaid, to

a stated address, without specifying the particular mode of mailing to be adopted. If it is held that such a stipulation is complied with by adopting a method of mailing, the result of which, in the not improbable event of the addressee's being absent for a few days from the place to which the letter is addressed, will be that he will not get it at all, the construction is one under which the sender may make the addressee's opportunity of getting the letter materially less than it would be if it was so mailed as to permit it to be forwarded to the addressee or to be held for a considerable time for delivery to him at the place to which it was addressed. To hold that under such a stipulation the sender has the option of selecting the method of mailing to be adopted would be construing it liberally in his favor, and not strictly in favor of the other party to the contract. The result would be that the stipulation, which is susceptible of more than one interpretation, would be interpreted most unfavorably to the insured. So far as the latter is concerned, an obvious purpose of the requirement of notice to him of a cancellation of the policy by the company is to give him an opportunity to reinsure. The company is not to be enabled to reduce this opportunity to a minimum, or to be given a chance to deprive the insured of it entirely, when the stipulation may be fully complied with in a way much less likely to involve such a result. The insured, by assenting to the stipulation in question, agreed to take such chance of his actually getting a notice of cancellation and a check for the return premium as was involved in the deposit of them in the mail, postage prepaid, to his stated address; but it is not to be supposed that it was in the contemplation of either of the parties to the contract that the insurer was to be at liberty to reduce this chance to a minimum by requesting the return of the letter if it should not be de-

livered within a very brief period after it reached the place to which it was to be addressed, especially as, if there was any benefit to the insurer in its getting back into its possession the undelivered notice of cancellation and its unused check, it was a benefit to which the contract did not entitle it, while, by its bringing about that result in that way, the purpose of the stipulation so far as the insured was concerned would be wholly defeated. The facts of the case do not require a determination of the particular method or methods of depositing in the United States mail the notice of cancellation and a check for the return premium which properly may be regarded as a compliance with the stipulation in question. It is enough to say in conclusion that the method which the evidence shows was adopted by the defendant was one the adoption of which was so much more likely to result in depriving the plaintiff of all benefit from the stipulation than another or other methods which were equally within the general terms used, and might as well have been chosen, that to hold that what the defendant did was a compliance with the stipulation would amount to giving it a construction, not strict, as required by the rule governing in such a case, but so loose and liberal in behalf of the defendant and so unfavorable to the plaintiff as not to be permissible. The rulings of the trial court were in conformity with the views above expressed.

What has been said disposes of the assignments of error which have been insisted on in argument, except one based upon the overruling of objections to testimony of the plaintiff to the effect that he never received any notice of the cancellation of the policy. Assuming, without conceding, that there was error in those rulings, it was error without injury to the appellant, as it was a necessary conclusion from other evidence in the case,

which was admitted without objection and was uncontroverted, that the fact was as it was deposed to by the witness over the objections referred to. A judgment is not to be reversed because of the admission of questioned evidence of a fact which was clearly proved by undisputed evidence the admissibility of which was not questioned.

Affirmed.

NOTE.—The foregoing opinion was prepared by Presiding . Judge WALKER before his retirement from the Court of Appeals, and has been adopted by the court.

