# THE FEDERAL MUTUAL FIRE INSURANCE COMPANY

*vs.*

## ROCH JULIEN, Use of Charles C. Kellogg & Sons Company.

---

# THE CALVERT MUTUAL INSURANCE COMPANY

*vs.*

## ROCH JULIEN, Use of Charles C. Kellogg & Sons Company.

*Insurance—Waiver—Proofs of Loss—Clear Space Clause.*

A waiver of the filing of formal proofs of loss may be based on acts of the insurer subsequent to the expiration of the time named in the policy for the filing of such proofs, estoppel not being, in this State, a necessary element of waiver.      p. 383

A provision in a fire insurance policy requiring the maintenance of a clear space of a named extent between the insured property and any wood-working or manufacturing establishment, was not violated by the presence within such space of an uncompleted building, with no machinery installed therein, though such building was to be used as a planing mill.

pp. 385, 386

*Decided January 8th, 1924.*

Appeals from the Baltimore City Court (FRANK, J.).

Actions by Roch Julien, use of Charles C. Kellogg & Sons Company, against the Federal Mutual Fire Insurance Company of Baltimore City and the Calvert Mutual Insurance Company of Baltimore City. From a judgment for plaintiff in each case, each defendant appeals. Affirmed.

The instruction granted was as follows:

The court rules as matter of law that by the uncontradicted evidence herein, it is shown that there was no violation of the "clear space clause" set out in the contract here in suit, and that if the court sitting as a jury shall

find from the evidence that the plaintiff notified the defendant promptly after the loss, and that the defendant sent its adjuster to visit the scene of the loss and that the adjuster reported a violation of the "clear space clause," and that defendant refused payment within eight days before suit was brought giving as its reason for such refusal that a violation of the "clear space clause" and vitiated the contract; and shall further find that no reference was made at that time to the lack of proofs of loss and that no such reference had been made to plaintiff, his counsel or agents either before or after that time until some considerable period of time had elapsed after suit was brought, that then from such facts, if they shall be found by the court sitting as a jury, the court sitting as jury may find a waiver by defendant of the requirement of formal proof of loss; and if the court, sitting as jury, shall find such waiver, then its verdict shall be for the plaintiff for the sum of two thousand dollars, with interest from the sixteenth day of June, 1921, in the discretion of the court sitting as a jury.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John Holt Richardson* and *Allan W. Rhynhart*, for the appellants.

*W. Hall Harris* and *W. Hall Harris, Jr.*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The record in this case contains two appeals, one from each of two judgments against the appellants, respectively, which were entered upon the verdicts rendered in separate cases by the court below, sitting as a jury.

The plaintiff in each case was Roch Julien. In one, the Federal Mutual Fire Insurance Company of Baltimore was defendant, and in the other, the defendant was the Calvert Mutual Insurance Company of said city.

Each of the defendants in these cases issued to the plaintiff a policy by which he was insured "against all direct loss or damage by fire, * * * to the amount not exceeding $2,000.00 * * * on certain lumber and lumber products of the plaintiff on the yards of the Pontiac Lumber and Pulp Company, Limited, at or near Lake Macamic Station, Province of Quebec, Canada." The property insured was, within the life of the policies, destroyed by fire.

By agreement of the parties, the two cases were tried together upon an agreed statement of facts which applied to both.

The only defenses made to each of the actions brought in these cases were:

First: That the plaintiff failed to comply with the provision contained in each of said policies requiring formal proofs of loss to be filed within sixty days after the date of said loss.

Second: That the warranty found therein known as the "clear space clause" was broken, because of which the policies, by the express terms of the warranty, became null and void.

First: The agreed statement of facts shows that the plaintiff failed to file formal proofs of loss as required by the policies, but the claim is made by him that he is not thereby prevented from recovering, as the necessity for his so doing was waived by the defendants. In support of his claim of waiver it is shown that the plaintiff promptly notified the defendants of the loss suffered by him caused by the fire, and their adjuster, sent by them in response thereto, to investigate the loss, reported that there was a violation of the "clear space clause" contained in the policy.

In addition to the notice mentioned, the plaintiffs, immediately after the fire, made demand on the defendants respectively for the full amount of the policies, the loss being a total one; and he thereafter, through his counsel, again made demand upon the defendants for the payment of amounts claimed to be owing by them under the policies and was told by the officers of the defendants that the policies were vitiated because of the violation of the "clear space clause" in them;

but nothing was said at that time, or at any previous time, of the failure of the plaintiff to file his formal proofs of loss, and it was not until after the suits had been filed that any reference was made thereto by the defendants.

It was not until about eight days before the institution of the suits that the defendants absolutely denied all liability, which was based solely on the ground of the violation of the "clear space clause," and it was not, as we have said, until after the actions had been brought that any reference was made to plaintiff's failure to file proofs of loss.

It is claimed by the defendants that, inasmuch as their denial of liability, upon the ground stated, was not made within, but after, the time in which the formal proofs of loss should have been filed by the plaintiff, he was not injured or prejudiced by their silence in not referring to his failure to file such proofs of loss, as he could not then have filed them within the prescribed time. In other words, it is claimed by the defendants that estoppel is a necessary element of waiver.

It is said in *Cooley's Briefs on Insurance*, vol. 4, 3480, "that in Indiana, Maryland and New York, it has been held that estoppel is not a necessary element of waiver," and in support of this statement the author cites *Rokes* v. *Amazon Ins. Co.*, 51 Md. 512.

The contention made by the defendants is, we think, fully answered in that case, in which the Court said:

"It is conceded that where proofs of loss are furnished in time, and such proofs are defective, if the insurer puts his refusal to pay on other and distinct grounds, he will be held to have waived all objections to such defects; and will not be permitted to rely upon them in a suit upon the policy. * * * But it is argued that the failure to furnish the proofs within time stands upon different grounds, because the insured having by his own default forfeited the right to recover on the policy, he is not in any manner injured or prejudiced by the *subsequent* acts and conduct of the insurer. And it is contended, therefore, that a new consideration or

an express agreement on the part of the insurer, is necessary to renew or give vitality to the policy.

"It was said by Earl, Commissioner, in *Underwood* v. *Ins. Co., 57* N. Y. 502, that the law of waiver was based upon the doctrine of estoppel, and 'that in the absence of some consideration for a waiver, or some valid modification of the agreement between the parties, there could be no such thing as waiver of a condition precedent, except there be in the case an element of estoppel'; in other words, unless the failure to furnish the proofs within the time prescribed by the policy, had been occasioned in some way, by the acts or conduct of the insurer.   The other commissioners, however, did not concur with the learned judge in his views upon the law of waiver, and the case was decided on other grounds.   See also *Beatty* v. *Ins. Co., 66* Pa. St. 9.

"We have carefully examined all the cases within our reach on this branch of the case, and are of opinion that the contention of the appellee is unsupported either by principle or by the weight of authority.

"Preliminary proofs are required for the benefit solely of the insurer, in order that he may ascertain the nature, extent and character of the loss; and the condition in the policy in respect thereof, being inserted for his benefit, there is no reason why he may not waive or extend the time within which such proofs are to be furnished.   Nor is it necessary to prove an express agreement to waive.   On the contrary, it may be inferred from the acts and conduct of the insurer inconsistent with an intention to insist upon the strict performance of the condition.   *Tayloe* v. *Ins. Co.,* 9 How. 390; *Post* v. *Ins. Co.,* 43 Barb. 351; *Phillips* v. *Ins. Co.,* 14 Mo. 220; *Owens* v. *Ins. Co.,* 57 Barb. 518; *Graves* v. *Ins. Co.,* 12 Allen, 391; *Dohn* v. *Ins. Co.,* 5 Lansing, 275.

"But conceding for the purposes of this case, that there must be an element of estoppel in order to constitute a waiver, there is evidence in this record legally sufficient in our opinion to submit to the jury to support a waiver given on that ground.   Estoppel as used in this connection, we understand

to mean where the insurer, knowing that the proofs have not been furnished within time, so bears himself thereafter in relation to the contract, as fairly to lead the assured to believe that he still recognizes the policy to be in force and binding upon him."

See also the following cases: *Caledonian Ins. Co.* v. *Traube*, 80 Md. 214; *Firemen's Ins. Co.* v. *Floss*, 67 Md. 417; *Citizens Mut. Fire Ins. Co.* v. *Conowingo Bridge Co.*, 116 Md. 422; *Peninsula Produce Exchange* v. *New York, P. & N. R. R. Co.*, 122 Md. 231.

Second: The warranty in the policies, which we have referred to as the "clear space clause," provided that a continuous clear space of three hundred feet should thereafter be maintained between the property insured and any *wood working or manufacturing establishment* or dry kiln, and that said space should not be used for the handling or piling of lumber thereon for temporary purposes; and it was understood and agreed that any violation of said warranty should render the policy null and void.

At the time the policies were issued there was, between the property insured and the saw mill upon the premises, a clear space of about 550 feet. After the policies were issued, the Pontiac Lumber and Pulp Company, without the knowledge of the plaintiff, started the erection of a building, 50 by 50 feet in dimensions, upon an open space between the saw mill and the lumber insured, 400 feet south of the mill and 100 feet from the lumber in question, which building was to be used, when erected, as a planing mill. This building was not completed at the time of the fire, and the machinery had not been assembled in it. Had the building been completed at such time, with the necessary machinery in it, and the same in operation, it no doubt would have been a "wood working or manufacturing establishment," and its existence, at the location mentioned, would have been a breach of the warranty. But the unfinished building, though intended to be used, when completed and equipped with the necessary ma-

chinery, as a planing mill, was not a wood working or manufacturing establishment within the meaning of the warranty clause in the policy, and this was the view taken by the learned judge below.

The object and purpose of prohibiting a wood working or manufacturing establishment to be located in the space mentioned was to prevent the insured property from being subjected to greater hazard or risk of fire.

There can be no question but that a planing mill in operation, located within the distance mentioned, would subject the insured property to a greater risk and hazard, and this would possibly be true, though in a lesser degree, when the mill was temporarily shut down, after having been operated with the shavings around and about it, but this cannot be said of an unfinished building, with no machinery in it, and which has never been used as a mill.

It was certainly not a mill within the meaning of said provision until the building was complete, the machinery installed and the plant ready for operation, and therefore it was not prohibited by the policies, as it was not named or included within the prohibitions mentioned.

It may also be said that the fire, which destroyed the property, was a brush fire, started on the outside and to the southwest of the yard of the Pontiac Lumber and Pulp Company, which was in the opposite direction from the building in question.

The plaintiff, as well as the defendants, offered a number of prayers, all of which were rejected, and the court below granted an instruction of its own, which the reporter is asked to insert in his report of this case. This instruction, we think, fully stated the law of the case, and we find no reversible error in the court's ruling in the rejection of the plaintiff's and defendant's prayers. The judgment appealed from in each of these cases will therefore be affirmed.

*Judgments affirmed, with cost.*