# FIDELITY & CASUALTY COMPANY *v.* RUSSELL J. RILEY
[No. 31, January Term, 1935.]

 

 

 

*Decided April 3rd, 1935.*

 

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*O. Bowie Duckett, Jr.*, with whom were *Hargest, Le Viness, Duckett & McGlannan*, on the brief, for the appellant.

*Hall Hammond*, for the appellee.

SLOAN, J., delivered the opinion of the Court.

On February 6th, 1932, the Fidelity & Casualty Company of New York, appellant, issued to Russell J. Riley, appellee, an accident insurance policy. It was solicited by Edward Adrian Teaf, an employee of Parker & Co. of Philadelphia, agents of the appellant. Riley, who did not pay the premium, $38.35, testified the arrangement with Teaf was, "I agreed to pay him when I got the money; when I could afford to pay it." He never did pay, and the insurer did not receive it until it was charged by the insurer against the account of Parker & Co. In his application for insurance Riley gave his address as "735 Wynwood Road, City of Overbrook, Philadelphia County, State of Pennsylvania." One of the provisions of the policy of insurance was: "The company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address, as shown by the records of the company, together with cash or the Company's check for the unearned portion of the premiums actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto." A notice was sent by the company from its Philadelphia branch office at the Philadelphia postoffice, October 5th, 1932, by registered mail, to the insured, Russell J. Riley, to the address given by him in his application, advising him that his policy was canceled effective at noon on October 11th, 1932, and at the same time a duplicate copy of the notice was mailed to him, registered, care of Pontiac Sales Agency, Pimlico Track, Baltimore, Md., Parker & Co. having advised the insurer that he might be found there. The Overbrook letter, according

to the cancellation stamps, was received at West Park Station, Philadelphia, October 6th, 1932, and returned by that station to the Philadelphia postoffice October 10th, where it was held until October 18th unclaimed, and returned to the sender. The letter addressed to Baltimore arrived there October 6th, and on the same day was sent to Arlington Station, where it was held unclaimed until October 14th, when it was returned to and received at the Philadelphia postoffice and returned to the sender. On the envelope was a notation, "Track closed." The insurer did not inclose with either notice the cash or its check for the unearned portion of the. premium, but by letter of November 10th, 1932, advised Parker & Co. that there was due them a return premium of $12.39 on Riley's policy and to take credit for the item.

Riley was severely injured in an automobile collision in Baltimore on December 11th, 1932, was taken to a hospital, where he remained until January 22nd, 1933, and then went to his home, where he remained for seven weeks. He went back to work on July 10th, 1933, as a part time automobile salesman, his physician advising him that he should not work steadily and not to do any driving. July 19th, 1933, Riley wrote the insurer at New York that on December 13th, 1932, he had suffered an accident which "totally disabled" him, and requested it to send him forms for filing proofs of loss. A "Preliminary Report of Accident or Illness" was sent, which he made and returned to New York. There was no response to this report by the insurer, and on August 3rd, 1933, the insured's attorney wrote the insurer at its Baltimore office that nothing had been heard from the company since the report was mailed, and on the 10th he was written to by the company's examiner at Baltimore that "the above policy having been cancelled, the Fidelity and Casualty Company carry no insurance on the above named Russell J. Riley." On August 23rd, 1933, suit was brought by Riley on the policy, resulting in a judgment in favor of the plaintiff (appellee), from which the casualty company appealed.

Two questions were presented and argued: (1) The sufficiency or effectiveness of the notice of cancellation, or whether there was a notice under the terms of the policy; (2) was notice given as soon as was reasonably possible for him to do so after the accident?

1. Was the notice of cancellation which the insurer undertook to give the insured within the requirements of the condition of the policy already quoted?

The insurer had the option, under the policy, to cancel by "written notice delivered to the insured or mailed to his last address as shown by the records of the company." All that was required of the company was to give the notice in either of the ways so plainly prescribed by the policy. The notice in this instance was sent by the insurer, postage prepaid, to the last record address of the insured, No. 735 Wynwood Road, Overbrook, Pa., by what is known in the postal regulations as an "unrestricted" registered letter. Such a letter, under section 1323, may be delivered (a) to the addressee: (b) to a person authorized by the addressee to receive it; (c) to such person, other than the addressee, as the sender, after mailing, directs in a written order verified by the mailing postmaster; (d) to any responsible person to whom the addressee's ordinary mail is customarily delivered.

Registered mail is delivered by the regular carrier, and, if there is no one at the place addressed to receive it and receipt for it, a notice is left in the mail receptacle advising the addressee that the letter is being held for him, and, if unclaimed by the time noted on the envelope, if there be such time, otherwise ten days, it is returned to the sender. There was no evidence as to what was done about the delivery of the letter in this case, but, in the absence of evidence to the contrary, the presumption is that the postal officials and employees did what the law required of them. *Meese v. Goodman,* 167 Md. 658, 176 A. 621; *Union Trust Co. v. State,* 116 Md. 368, 372, 81 A. 873.

The rights of the respective parties under the insurance contract were clearly stated in *Stiegler v. Eureka Life Ins. Co.*, 146 Md. 629, 642, 127 A. 397, 402, a case wherein the insurer undertook to rescind the contract, no cancellation clause appearing in the policy, on the ground that a fraud had been perpetrated in the application for insurance, this court there saying: "The policy of insurance in this case contained no clause permitting cancellation by either the insurer or the assured. It is important to bear this fact in mind, because a right conferred by the policy to cancel is exercisable at the option of the party, with or without a reason, while the right of rescission is implied and usable only when there exists some legally sufficient cause, as, for example, fraud, deceit, or misrepresentation. It is, therefore, a corollary that the method of communicating a rescission is according to the practice at common law, as it is here neither regulated by the terms of the policy or by statute." As to the manner by which notice may be given, it is said (146 Md. page 647, 127 A. 397, 404): "If it be proved that a letter which was sufficiently prepaid in stamps was correctly addressed and then mailed, this is evidence to establish that the letter was duly delivered to the person addressed." In that case the letter was imperfectly or incorrectly addressed, and it was necessary to show whether the letter so addressed reached the insured within the year after which the policy became incontestible from any cause. The policy in this case did not say whether notice should be sent by ordinary or registered mail. If it had been sent by ordinary mail properly addressed to the "last address" of the assured appearing "on the records of the Company," with cash or the company's check for the unearned portion of the premium "actually paid" by the insured, the requirements of the condition for cancellation would have been met; the presumption being that in the due course of the mail service it was delivered at the place addressed, in this case properly the Overbrook address. *Stiegler v. Eureka Life Ins. Co., supra; Liverpool & London & Globe Ins. Co. v.*

*Harding* (C. C. A.) 201 Fed. 515, 517; *Kamille v. Home Fire & Marine Fire Ins. Co.*, 129 Misc. 536, 221 N. Y. S. 38; *Wolonter v. U. S. Casualty Co.*, 126 Va. 156, 101 S. E. 58, 61; *In re Leterman, Becher & Co.* (C. C. A.) 260 Fed. 543; 46 *C. J.* 569. In the case of *American Fire Ins. Co. v. Brooks*, 83 Md. 22, 34, 34 A. 373, 376, where the provision for cancellation did not say how the notice should be given, it was held that actual notice was necessary; this court there saying of the cancellation clause in the policy there considered: "These are conditions upon which the right of the company to cancel rests. They must be strictly construed and strictly performed."

In this instance the notice of cancellation was sent to the insured at the Overbrook address, the last on the records of the company, by unrestricted registered mail, which is the usual method. A "restricted" letter was defined by a postal official called by the defendant as one having on the envelope "words meaning 'deliver to addressee only.'" On the upper left-hand corner of the envelope was printed. "The Fidelity and Casualty Company of New York. Return in one week to Philadelphia Branch Office," etc. The postal official testified that the regulations required a registered letter to be returned to the sender in ten days, but that the printed directions on this envelope would start the letter back home in a week. Asked what was the proper procedure by the carrier in the event of failure to deliver, he answered: "A carrier ordinarily attempts delivery at the place stated. Failing in that he leaves a notice, and initials on the envelope the fact of that notice. Then when he returns the envelope he communicates that information to the register clerks. Subsequent to that the letter is held and if unclaimed it is returned to the sender." If delivered, a receipt is taken either from the addressee or some one at the place to which the letter is directed. In the case of ordinary mail, it is dropped "in the mail receptacle at the door." Assuming, without so deciding, that the insurer, under the facts shown in this case, was under no obligation to refund the unearned portion of the pre-

mium to the insured (*Hanover Fire Ins. Co. v. Wood,* 209 Ala. 380, 96 So. 250), if the notice had been sent by ordinary mail, postage prepaid, to the insured at 735 Wynwood Road, the condition of the policy with respect to cancellation would have been complied with and the policy canceled at noon on the 11th day of October, 1932.

The question then is, Was notice by registered mail undelivered such a compliance with the condition for cancellation as the policy contemplated? It is not whether there is more likelihood of registered mail reaching the addressee than ordinary mail, but which is in accord with the contract of insurance? The policy required either "written notice delivered to the insured or mailed to his last address as shown by the records of the company." It appears here that the company attempted to deliver a notice to the insured, in which case it would have been necessary not to prove mailing, but delivery of the notice to him, else why send two registered letters, one to Overbrook and one to Baltimore? A registered letter requires a receipt from the addressee or from some one at the place addressed who would customarily receive the addressee's mail. If such a delivery had been made and receipt taken, the cancellation clause with regard to mailing would have been gratified, the only difference being that an ordinary letter would have been dropped in the mail receptacle at the door, while the registered letter would have to be delivered to some one in the house, and either would have been a mailing within the meaning of the policy. But in this case the notice never got into the house addressed and thus failed of its purpose. What was done here by the insurer was to give notice and then withdraw it.

In the case of *American Auto Ins. v. Watts,* 12 Ala. App. 518, 67 So. 758, the company sent notice of cancellation with its check for the unearned premium by registered mail from St. Louis, addressed to the insured at Selma, Ala. In the upper left-hand corner of the envelope containing the notice and check was printed: "Return in five days to American Automobile Insurance Company,

Pierce Building, St. Louis, Mo." It was received at the Selma postoffice May 24th, 1913, and notices put in his postoffice box on May 24th and 27th. Five days after its receipt, the letter was returned by the Selma postmaster to the sender. Watts was absent from Selma until June 23rd, when he got his mail. The notices merely stated that a registered letter was being held for him. The policy provided: "Notice of cancellation deposited in the United States mail, postage prepaid, to the address of the assured, as stated herein, shall be sufficient notice," etc. At the conclusion of its opinion the court said: "It is enough to say * * * that the method * * * adopted by the defendant * * * was so much more likely to result in depriving the plaintiff of all benefit from the stipulation than another or other methods which were equally within the general terms used, and might as well have been chosen, that to hold that what the defendant did was a compliance with the stipulation would amount to giving it a construction, not strict, as required by the rule governing in such a case, but so loose and liberal in behalf of the defendant and so unfavorable to the plaintiff as not to be permissible." The reasoning of the case just cited applies with equal force to the instant case. For the reasons which we have here assigned, it is the opinion of this court that the attempt here made by the appellant (insurer) to cancel Riley's policy was not a mailing within the meaning of the cancellation clause of the policy and that the policy was in force the day of the insured's accident.

2. This leaves the question of the failure of the assured to comply promptly with the provisions of the policy for notice of injury and proof of loss. Section 4 of the "Standard Provisions" of the policy required notice of injury to be given the company "within twenty days after the date of the accident causing such injury." Section 5, the claim shall not be invalidated "if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." The company is then required to furnish

forms within fifteen days after a notice of accident.
There was a valid excuse for considerable delay in report-
ing the injury by the insured, as his skull had been frac-
tured, an eardrum bursted, and other injuries had been
sustained, which kept him in a hospital for five weeks,
and after that he was home indoors for seven weeks.
The insured, Riley, was so clumsy in his efforts to explain
his failure more promptly to make claim for compensa-
tion under his policy that one who reads the record can-
not escape the conviction that he did not think his insur-
ance was in force until he consulted a lawyer about the
end of May or 1st of June, 1933. His brother testified that
he was "very nervous until about April." Riley himself
said, "I really forgot I had a policy until I received a
letter from Mr. Teaf asking me to pay him the money I
owed him." Teaf had written him January 17th, 1933,
expressing his regret that he had not been able to keep
his insurance in force. As said, there was a valid excuse
for Riley's failure to report his injuries to the company
for three months, but his excuse was that he forgot he
had a policy till he received a letter from Mr. Teaf asking
him to pay the money he owed him. It is evident that
he had no intention of making a claim until he consulted
a lawyer about June 1st, 1933. If the delay in notifying
the company had been its defense, the court could prop-
erly have held as a matter of law that the plaintiff had
failed, for an unreasonable time, to give the insurer the
notice of injury which the insurance contract required.
*Maryland Casualty Co. v. Ohle,* 120 Md. 371, 379, 380,
87 A. 763; *Lewis v. Commercial Casualty Ins. Co.,* 142
Md. 472, 121 A. 259; *American Casualty Co. v. Purcella,*
163 Md. 434, 163 A. 870.

But the insured (appellee) contends that the defense
of failure to give notice of injury is not available to the
insured after its denial that the policy of insurance was
in force the day of the accident to the insured, and that
such a denial is a waiver of the proofs of loss. In this
contention he is right. The rule as stated in *McElroy v.
John Hancock Life Ins. Co.,* 88 Md. 137, 149, 41 A. 112,

115, and since approved by this court, is: "The following grounds, or any one of them, have been declared to be sufficient to constitute a waiver of any defect in, or defense arising out of failure to duly give notice and proof of death: 'A proposal to settle;' 'an absolute refusal to pay on the merits;' 'a denial of all liability;' 'a negotiation with the insured, without making the objection of defective proof of death.' " *Bliss on Life Insurance*, sec. 268; *Cooke on Life Insurance*, p. 118. And then, showing a striking likeness to the attitude of the insurer in this case; "In its letter to the plaintiff, the defendant said: 'The papers in themselves are correct enough, but the company has decided not to recognize the claim under this policy.' Not a word here to indicate that its refusal to pay the plaintiff was because of want of reasonable proof of death. On the contrary, the only reasonable inference to draw from this language is that, without reference to any objection based on the proof of death, it had some meritorious defense on which it intended to rely." And, citing this case as authority, this court, in *Prudential Ins. Co. v. Devoe*, 98 Md. 584, 587, 56 A. 809, 810, said: "the company's denial of liability under the contract of insurance was a waiver of the proof of death." *Continental Ins. Co. v. Burns*, 144 Md. 429, 436, 125 A. 232; *Federal Mutual Fire Ins. Co. v. Julien*, 144 Md. 380, 125 A. 229; *Brotherhood v. Nash*, 144 Md. 623, 125 A. 441. Upon the authority of these cases, there was evidence from which the jury could find the requirement of notice of injury to have been waived.

The rulings on the prayers were consistent with what has already been said in this opinion, and require no further discussion.

*Judgment affirmed, with costs.*

BOND, C. J., and PARKE, J., dissent.