AUGUSTUS L. HOLMES & another *vs.* JOHN HIGGINSON CABOT.

Suffolk.    October 20, 1927.— January 6, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Bills and Notes,* Protest, Holder in due course, Payment by coindorser. *Evidence,* Of notice, Notarial certificate, Presumptions and burden of proof.  *Practice, Civil,* Finding of fact by trial judge.  *Payment.*

A certificate of a notary public, annexed to a note bearing two indorsements above that of the payee, was signed by him in his official capacity and had attached to it his official seal.  It stated in substance that on the due date of the note he had made demand upon the bookkeeper of a bank at which the note was payable, payment had been refused, and that he "duly and officially notified . . . endorsers under cover to . . . the last endorser . . . of said nonpayment requiring payment Wherefore, I, the said Notary, . . . have protested and by these presents do solemnly Protest, against the drawer of said note the endorser and all others concerned therein . . . ."  At the hearing by a judge without a jury of an action by the payee, the last indorser, against the first indorser, the notary testified in substance that he instructed his stenographer to send the "notices of protest direct to each of the indorsers and under cover to . . . [the last indorser, who also was the payee] for all the indorsers; that he did not mail the notices himself, nor did he see them mailed"; and that the defendant "told him he had received one notice."  The plaintiff testified that he received notice of nonpayment from the notary, had copies made and sent them to the indorsers immediately the same day as he received them, putting them

in envelopes addressed to the indorsers and placing them in a container in which it was customary to deposit outgoing mail; that "he did not mail them himself nor see them mailed." The judge refused to rule that the plaintiff had not complied with the requirements of the statutes with reference to notice of dishonor, found that the material allegations of the declaration as to the note were true, and found for the plaintiff. Upon exceptions by the defendant, it was *held,* that

(1) The notarial certificate was *prima facie* evidence of the facts stated therein and of the giving of notice to the last indorser;

(2) It was not essential to recovery by the plaintiff that the receipt of the notices by the defendant should be proved;

(3) The testimony by the notary did not necessarily negative the *prima facie* evidence contained in his certificate, even if full credibility were given to that testimony;

(4) There was nothing in the testimony of the plaintiff to require a finding that the notice he received from the notary was not duly mailed to the defendant;

(5) A finding was warranted that due notice of protest was given to the defendant.

Although, in an action upon a promissory note by the payee against an accommodation indorser, there was evidence that a certain person acted for the plaintiff in collecting a note for which the note in suit was substituted and knew that the maker and his business were of doubtful financial reliability but did not state such fact to the defendant, and that the maker of the note did not disclose that fact to the defendant but "caused him to believe that the business was in a prosperous condition," the judge was not required as a matter of law to find for the defendant but might believe such evidence in whole or in part and find that the plaintiff was a holder in due course.

At the hearing by a judge without a jury of an action against one of two accommodation indorsers upon three promissory notes, it appeared that the other indorser had been separately sued by the plaintiff and that, after the action was brought, he paid the plaintiff a sum "computed by him to be one half of the amount then due on the three notes in suit." This sum was received by the plaintiff "generally." The judge found for the defendant on one of the notes by reason of a failure of due notice of protest; and applied the payment by the other indorser proportionately upon all three notes. The defendant contended that it should be applied solely on the two notes as to which there was a finding for the plaintiff. *Held,* that

(1) It was the duty of the judge to make the application according to the intention of the parties as implied from all the facts and circumstances disclosed;

(2) The judge's finding was warranted.

CONTRACT, by "Augustus L. Holmes and Francis P. Luce, a co-partnership doing business under the firm name of Holmes, Luce & Co.," upon three promissory notes described in the opinion. Writ dated March 12, 1925.

In the Superior Court, the action was heard by *Weed*, J., without a jury. The copies of the notes annexed to the declaration bear three indorsements: in order, those of the defendant, of Franklin H. Swift, and of the plaintiffs. The certificate of the notary as to protest of the note due January 30, 1924, signed by him as a notary and bearing his official seal and attached to that note, was as follows:

"On the thirtieth day of January in the year of our Lord one thousand nine hundred and twenty-four, I, Stephen C. Luce, Jr., Notary Public, duly appointed and sworn, and practising in said Commonwealth, at the request of Bookkeeper, Esq. of the Martha's Vineyard National Bank of Tisbury, went with the original note which is hereto annexed, the time therein limited and grace having fully elapsed, and demanded payment thereof of said Bookkeeper, who refused payment, answering 'Insufficient Funds.' The note remaining unpaid, I duly and officially notified the drawer direct, and endorsers under cover to Holmes, Luce & Co., the last endorser (postage prepaid) of said non-payment requiring payment

"Wherefore, I, the said Notary, by request as aforesaid, have protested and by these presents do solemnly Protest, against the drawer of said note the endorser and all others concerned therein, for Exchange, Roe-Exchange, [*sic*] and all Costs, Charges, Damages, and Interest, Suffered and Sustained, or to be Suffered and Sustained, by reason or in consequence of the non-payment thereof."

The certificate attached to the note which fell due July 30, 1924, was in the same language as the above, except for the difference in dates, the omission of the words "of Tisbury," and the substitution of the words "No Funds" for "Insufficient Funds."

Across the face of each note, according to the copy annexed to the declaration, under the date when it came due, was the following: "Protested by me for non-payment. Stephen Luce, Jr., Notary Public." The record contained no evidence nor finding as to such statement. Neither copy included the notary's official seal.

Other material evidence is stated in the opinion. The

judge found "that the material allegations of fact in counts one and two of the plaintiffs' declaration are true," refused the rulings asked for by the defendant and quoted in the opinion, and found for the plaintiff on the first two counts in the sum of $922.94. The defendant alleged exceptions.

*M. C. Taylor*, for the defendant.

*O. Storer*, (*J. J. Lucas* with him,) for the plaintiffs.

CARROLL, J. This is an action of contract on three promissory notes, made by Howard E. Whitney, payable to "Holmes Luce & Co." at The Martha's Vineyard National Bank, and indorsed by the defendant and Franklin H. Swift. The case was tried before a judge of the Superior Court who found for the plaintiffs on the first and second counts, and for the defendant on the third count. The defendant requested the judge to rule that the plaintiffs had not complied with the requirements of the statutes with reference to notice of dishonor. The first count is upon a note for $810.69, payable in one year from its date; the second, on a note for $1,000, payable in eighteen months; the third was to recover on a note for $1,000 due in two years. All the notes were dated January 30, 1923. On the third count the judge found for the defendant, on the ground that this note was not duly demanded and due notice of nonpayment was not given the defendant.

The notary who executed the notarial certificates attached to the two notes referred to in the first and second counts testified that he executed the certificates and attached them to the notes, that he instructed his stenographer to send the "notices of protest direct to each of the indorsers and under cover to Holmes, Luce & Company for all the indorsers; that he did not mail the notices himself, nor did he see them mailed." Copies of the notarial certificates were introduced in evidence. The certificate attached to the note declared on in the first count was dated January 30, 1924; it stated that the note was protested by him for nonpayment. The certificate on the note in the second count is dated July 30, 1924; it states that this note was protested by him for nonpayment. The notary further testified that the defendant "told him he had received one notice." Augustus L.

Holmes, one of the plaintiffs, testified that he received notices of nonpayment from the notary. "I had copies . . . [and] sent them to the indorsers . . . immediately . . . the same day, just as soon as I got them." On cross-examination he testified that he put the notices into envelopes addressed to the indorsers, and placed the envelopes in a container in which it was customary to deposit outgoing mail; that "he did not mail them himself nor see them mailed."

The notarial certificate itself was *prima facie* evidence of the facts stated and of the giving of notice to the indorser. The statute expressly states: "The protest of a . . . promissory note . . . certified by a notary public under his hand and official seal shall be *prima facie* evidence of the facts stated in such protest, and of the giving of notice to the drawer or endorser." G. L. c. 107, § 13. It was not essential that the receipt by the defendant of the notices should be proved. "Where notice of dishonor is duly addressed and deposited in the post office the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." G. L. c. 107, § 128. There was no affirmative evidence that the notices were deposited in the post office, but there was *prima facie* evidence of protest by the notarial certificate which was not overcome by any substantial evidence to the contrary. The evidence of the notary, to the effect that he executed the notarial certificates attached to the notes and instructed his stenographer to send the notices of protest "direct to each of the indorsers and under cover to Holmes, Luce & Company for all the indorsers," but that he did not mail the notices himself, nor see them mailed, and had no personal knowledge of what "his stenographer actually did with them," did not necessarily negative the *prima facie* evidence even if full credibility were given to the testimony stated. The judge who heard the evidence would be justified in finding that the notices were duly mailed. There was nothing in the testimony of the witness Holmes to require a finding that the notices he received from the notary were not duly mailed to the defendant. He stated he sent these copies to the indorsers immediately, on the same day they were received by him, that he put them in

the container "in which it was customary to deposit out-going mail"; and the letter of February 4, dictated by him, which was admitted without objection, shows that he received the notice of protest on January 30. In addition to this the defendant admitted "he had received one notice." There was evidence therefore to justify the finding of the judge that the material allegations of counts one and two were true. *Prudential Trust Co.* v. *Hayes,* 247 Mass. 311. *Commercial Trust Co.* v. *New England Macaroni Manuf. Co.* 247 Mass. 366.

The defendant contends that the plaintiffs are not holders in due course. The plaintiffs conducted a branch furniture store in Vineyard Haven, which they sold to Franklin H. Swift, accepting in payment Swift's notes aggregating $6,810.69. Later Swift formed a partnership with Whitney, who subsequently bought out Swift. The plaintiffs agreed to accept Whitney's notes and to surrender the Swift notes, provided Whitney's notes were indorsed by Swift and the defendant. Stephen C. Luce testified that the checking account of Swift and Whitney was in his bank; that he was acting for the plaintiffs in connection with the collection of the original notes signed by Swift and all of the negotiations leading up to the execution of the notes; that he knew the business had been operated at a loss and knew of other facts which caused him to believe that the notes, if signed by Whitney alone, would be of doubtful value. Whitney testified to the effect that for some time prior to the making of the notes the business had been conducted at a loss; that he did not disclose any of these facts to the defendant but "caused him to believe that the business was in a prosperous condition."

The degree of credibility to be given to this evidence was for the trial judge, who heard the witnesses. He found that the plaintiffs were holders for value; that there was no failure of consideration nor was there any mutual mistake; and in finding for the plaintiffs, as he did, he must have found they were holders in due course. He may not have believed the testimony offered and relied on by the defendant to show that the plaintiffs were not holders in due course. He may have

found that Luce was not the agent of the plaintiffs. All the facts and circumstances were for the judge to find. Without deciding the question, whether the defendant offered any evidence which if believed was sufficient to show that the plaintiffs were not holders in due course, it is enough to say that no error of law is shown by the ruling of the judge on this question. *McLaughlin* v. *Paine Furniture Co.* 245 Mass. 377, 382.

It appeared that, after the present action was brought, Swift, who had been separately sued by the plaintiffs, paid them the sum of $1,512.46, "said sum being computed by him to be one half of the amount then due on the three notes in suit." This sum was paid by Swift and "received by the plaintiffs generally." The judge found and ruled that the $1,512.46 was to be applied proportionally to the three notes in suit. The defendant contends that, as the note declared on in the third count was not legally enforceable, this sum should be applied to the notes set out in counts one and two. There was no express application of the payments by Swift, and the creditor made no express application at the time of payment. It was the duty of the court to make the application according to the intention of the parties as implied from all the facts and circumstances disclosed. Swift had been sued upon the three notes; he may or may not have known that the third note was not duly presented for payment and duly protested. However this may be, he saw fit to compute the amount of one half of the entire debt, and after he made this computation he paid the amount to the plaintiffs in full payment. This is enough to negative the contention that Swift intended payment on but two of the notes. He knew the defendant was a joint indorser with him on the three notes; it could be found that in making the computation he was seeking to determine what he considered his part of the entire debt. The judge might well have found that, in ascertaining one half of the entire debt and in making the payment, he did not intend to apply this amount to but two of the notes with a possible liability on the third note continuing; that if he took into account merely his indebtedness on the two notes he would not have

computed and paid one half of the debt due on the three notes.

There was no error in the rulings and findings and there was no error in refusing the rulings asked by the defendant. The defendant's exceptions are overruled.

*So ordered.*