HELEN WINGATE KELLEY & another *vs.* EDWARD M. PETERS, executor.

Middlesex.    November 8, 1937. — December 30, 1937.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Probate Court,* Vacation of decree, Findings by judge.    *Fraud.*

Although, on an appeal from a decree of a probate court dismissing a petition for revocation of a decree allowing a will, it appeared that the petition was heard only upon conflicting statements of expected

proof by counsel for the respective parties and that in a "report" filed after the dismissal of the petition, the judge erroneously based his decree upon findings of facts in accordance with the statement by the respondent's counsel, this court, upon examination of the facts offered to be proved by the petitioner's counsel and undisputed facts disclosed by the record, determined that the petitioner was not entitled to relief and affirmed the decree.

Next of kin of a testator were not entitled to maintain a petition for revocation of a decree allowing his will without a contest after the executor named therein had suppressed evidence as to unsoundness of mind of the testator and undue influence exerted upon him, where it appeared that they were not illiterate nor unfamiliar with business and legal matters, that, after the will had been read to them by the executor without concealment or false representations, they had examined and assented in writing to the petition for probate, and that, although later and before the allowance of the will they acquired full knowledge of its contents and their significance, they did not withdraw their assents.

PETITION, filed in the Probate Court for the county of Middlesex on January 30, 1937, by Helen Wingate Kelley and Dorothy Wingate Parrott. The petition was heard by *Leggat*, J.

*A. W. Wunderly*, for the petitioners.

*J. W. Vaughan*, for the respondent.

DOLAN, J. This is an appeal from a decree, entered in the Probate Court for the county of Middlesex, dismissing a petition for the revocation of a decree of said court, dated January 20, 1937, allowing certain instruments purporting to be a will (dated December 5, 1934) and codicil (dated May 24, 1935) as the last will and testament of James D. P. Wingate (hereinafter called the testator), late of Medford in the county of Middlesex, who died on January 11, 1937, and who, up to that time, had been the owner of a majority of the shares of stock of the Medford Publishing Company. The two petitioners for revocation of the decree of probate are his daughters and sole heirs. With the exception of certain real estate in New Hampshire devised to the petitioner Mrs. Kelley, personal effects in the home in Medford bequeathed to Mrs. Parrott, and two specific bequests of jewelry, the estate of the deceased was given to the respondent on trusts for the benefit of the two petitioners, with remainder over on the death of each to her

issue on terms and limitations which need not be described in detail. The prayers of the petition for revocation are that the decree of probate be revoked; that the petitioners be permitted to withdraw their "supposed" assents to the allowance of the petition for probate and to move that issues be framed for jury trial.

A stenographer was appointed to report the evidence. No evidence was in fact introduced. At the outset of the hearing the trial judge said to counsel for the petitioners "You may make your offer and I will rule on it." The petitioners' counsel thereupon made a statement of facts which he offered to prove. At the conclusion of his statement the judge asked counsel for the respondent what he had to say and the latter made an offer of proof of facts tending for the most part to rebut the facts offered to be proved by the petitioners. The judge entered a decree dismissing the petition, and the petitioners appealed. The judge filed a "report" of facts, an examination of which and of the record discloses that the facts found by him were for the most part those stated by the respondent and not by the petitioners.

The governing principles as to the final disposition of cases on the statements of counsel are stated in *Dwyer* v. *Dwyer*, 239 Mass. 188, where, at page 190, the court said: "When there is no controversy concerning facts stated by counsel, or when from the discussion on both sides material facts not in dispute are elucidated, then the court may take these facts as agreed for the purposes of the trial and decide the case accordingly. Pertinent facts disclosed on the record of the case may be considered because they are not open to contradiction and import incontrovertible verity. *Cote* v. *New England Navigation Co.* 213 Mass. 177, 179. When a case is presented for adjudication in this way, it is the duty of the judge in framing a report to set out the substance of such agreed or undisputed facts. They stand in place of the evidence. They become the foundation for the decision." Manifestly in the case at bar the judge was not warranted in weighing conflicting statements of expected proof and in choosing between them, without

receiving evidence to determine where the truth lay. However, as the petitioners' offer of proof is before us together with certain undisputed facts which appear in the record, we proceed to examine them, and determine whether the facts they offered to prove, if substantiated by evidence, together with said undisputed facts, state a case which warrants relief on the merits.

We pass over such facts as the petitioners offered to prove which bear on the question whether they would have a meritorious defence to the petition for probate if that proceeding were open, because, unless it appears that in all the other circumstances of the case they are entitled to prevail, that element will not require our consideration.

The facts offered by the petitioners and those which are undisputed may be summarized as follows: The instruments were read by the respondent to the petitioners and other members of the family after they had returned from the interment of the testator at Exeter, New Hampshire, when all of them were tired and upset. The respondent read the instruments in a nervous and hurried manner. In response to a request of the petitioner Mrs. Kelley for a copy of the will, he replied that "it would take a couple of weeks before he could get it." The reading of the "will" took place on or before January 14, 1937, on which date the instruments were filed in the registry of probate, hereinafter called the registry. A day or two following the reading of the "will" the respondent's secretary called on the petitioners and told them "that she had something that had to be signed for the court, and that" the respondent "was anxious to have it signed," and indicated where they should sign. They went over it in a cursory manner and signed it supposing it was something that had to be done in relation to the case, relying on the respondent. They regarded him as their counsel. He had been the testator's attorney and had transacted legal business with both petitioners; had acted as counsel for the husband of Mrs. Parrott and had constantly conferred with her on business affairs. She lived with the testator and had attended meetings of the directors of the Medford Publishing

Company which were held at the "house." Mrs. Kelley owned in her own right twenty-six shares of stock of the said publishing company. The paper thus signed by them was in fact the petition for probate of the instruments in question and their signatures were in token of their assent to its allowance. It was also assented to by the two children of Mrs. Kelley, and by Mrs. Parrott's husband and their minor son, whose name was signed by his father. These persons were erroneously named in the petition for probate as among the heirs of the testator. The petition was filed in the registry on January 16, 1937. Between that date and prior to January 20, 1937, the petitioners became apprehensive as to the situation of the property, as they had not received a copy of the instruments, and the petitioner Mrs. Kelley went to the registry, read the instruments, apprehended their true meaning for the first time, and learned that a citation had been issued on the petition for probate returnable on February 9, 1937. The petitioners took no further action until January 27, 1937, when they received a letter from the respondent enclosing a copy of the will and stating that he "intended to have himself elected, or elect himself president of the Medford Publishing Company." Upon receipt of this letter the petitioners sent for their present counsel who advised them to enter their appearances in opposition to the probate. He then visited the registry and found that the will had been allowed on January 20, 1937. The petitioners on or about January 29, 1937, appealed from the decree allowing the will; on January 30, 1937, filed their petition for its revocation, now before us; on February 25, 1937, waived the said appeal and prosecuted the petition for revocation, decree dismissing which was entered on April 28, 1937. The judge's report of facts was filed on July 12, 1937. The petitioners also offered to prove that the decree of probate was procured to be entered by the fraud of the respondent in concealing from the judge that the instruments offered for probate were procured to be made by undue influence exercised by the respondent on the testator and that at the times of their execution the testator was not of sound mind.

The picture thus presented is not one where the contents of the written instruments were misrepresented or concealed from the petitioners. See *Hashem* v. *Massachusetts Security Corp.* 255 Mass. 29, and cases cited. The petitioners were not illiterate persons; they did not sign their assents to the petition for probate without examining it or in reliance on any false representations, nor was anything concealed from them with relation to its character or contents. See *Nutt* v. *Aldrich*, 267 Mass. 193, 195. The petitioners were not unskilled in matters relating to business or wholly unfamiliar with legal transactions. The instruments were in fact read to them by the respondent without concealment or false representations on his part. They examined the petition for probate before affixing their assents. They are presumed to have known its contents. *Nutt* v. *Aldrich*, 267 Mass. 193. The respondent was not a beneficiary under the instruments, and if it be that his appointment as trustee thereunder was an advantage to him, in the absence here disclosed of any fraud or concealment on his part or of any violation of fiduciary obligations due to the petitioners, that fact would not be material. The instant case is unlike such cases as *Hill* v. *Hall*, 191 Mass. 253, 262, and *Manheim* v. *Woods*, 213 Mass. 537, 541, 542. Moreover, the petitioners, prior to the decree of probate, did acquire full knowledge and understanding of the contents of the instruments, accompanied by an appreciation of the legal significance of their assents, had opportunity to seek permission to withdraw their assents to the petition for probate and to appear in opposition to its allowance, but did not do so until after the decree had been entered in the Probate Court in reliance on their assents.

The petitioners' offer to prove that the respondent secured the probate of the instruments by concealing from the probate judge that they had been procured to be made by undue influence exercised by him upon the testator and that at the times of their execution the testator was not of sound mind cannot avail them. "The suppression or concealment of material facts . . . does not, and in principle should not, change the accepted rule of public policy that

litigation should cease when parties have had a day in court." *Renwick* v. *Macomber*, 233 Mass. 530, 534. See also *Zeitlin* v. *Zeitlin*, 202 Mass. 205, where the same rule was said to apply in case of the introduction of false or fabricated testimony. That in the instant case there was no actual contested trial of the petition for probate does not take the case out of the rule. That was in fact the situation in the case of *Renwick* v. *Macomber*, 233 Mass. 530, but it must be noted that there the general notice by publication and mailing a copy of the citation to the persons interested was held sufficient in the absence of fraud to justify the entry of the decree allowing the will, even if the notice failed to reach the petitioners in that case. See *Bonnemort* v. *Gill*, 167 Mass. 338, 340; *Fuller* v. *Sylvia*, 243 Mass. 156; *Johnson* v. *Kerns*, 247 Mass. 92; and *Donnell* v. *Goss*, 269 Mass. 214. While it appears in the case at bar that the general notice prescribed in the form approved by the judges of probate and by this court (G. L. [Ter. Ed.] c. 215, § 30) in case of petition for probate of a will was not given, without intimating that in any circumstance such a notice giving to the proceeding its recognized character as one *in rem*, binding the world, should be dispensed with (see *Bonnemort* v. *Gill*, 167 Mass. 338), we think that the petitioners, having induced the Probate Court to act on their assents given freely and untainted by false representations or concealment, cannot be heard to complain. See *Wyness* v. *Crowley*, 292 Mass. 461, 464. The decree of the Probate Court dismissing the petition for revocation of the decree of probate is therefore

*Affirmed.*