CHARLES S. BATCHELDER *vs.* GRANITE TRUST COMPANY.

Norfolk.    March 3, 1959. — April 8, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Bills and Notes*, Presentment.    *Evidence*, Res inter alios.

With respect to a note, not specifying the place of payment or the address
    of the maker, in the hands of a bank for collection, G. L. c. 107, §§ 96,
    97, did not abrogate the common law rule that the bank became the
    place of payment and there was sufficient presentment to the maker
    to charge an indorser if the bank in accordance with its own custom
    and that of other banks in the locality, before the due date, sent
    written notice to the maker informing him that the bank had the note
    and what the due date was and calling on him to pay the note at the
    bank on the due date, without physical exhibition of the note. [22–24]
In an action against a bank by a holder of a note placed in the hands of
    the bank for collection, based on alleged failure of the bank to make
    proper presentment to the maker whereby a responsible indorser was
    discharged, it was proper to exclude as res inter alios the pleadings,
    evidence, requests for rulings and their disposition, and a finding of
    the court for the defendant in a previous action by the holder of the
    note against the indorser when offered as proof of failure to make proper
    presentment. [25]

CONTRACT.    Writ in the Superior Court dated March 21,
1955.

The action was heard by *Hudson*, J.

*Norman T. Byrnes*, (*Arnold W. Hunnewell, Jr.*, with him,)
for the plaintiff.

*John F. Carr*, for the defendant.

SPALDING, J.    The declaration in this action of contract
alleges that the plaintiff was the holder of a promissory note
which it placed in the defendant's hands for collection and
that due to the defendant's failure to make proper present-
ment to the maker, the indorser, from whom the plaintiff
would otherwise have been able to collect the amount of the
note, was discharged.    The case was heard by a judge on
evidence and agreed facts, and he made a general finding for
the defendant.

We summarize the pertinent evidence as follows: The defendant operates a bank in Quincy. The plaintiff for some time prior to 1946 had been the president, treasurer, and sole stockholder of C. H. Batchelder Co. In January, 1946, he entered into negotiations with one George E. Felton which resulted in the sale on April 1, 1946, of the major portion of the assets of C. H. Batchelder Co. (hereinafter called the company) to C. H. Batchelder Co., Inc. (hereinafter called the corporation), which was organized by Felton to continue the business of the company. Under the agreement of sale payment for the assets was to be partly in cash and partly by three interest bearing promissory notes, payable to the company, each in the amount of $5,000. The maturity dates of the notes were March 31, 1947, March 31, 1948, and March 31, 1949, respectively. Each note was signed on behalf of the corporation by Felton as chairman of its board of directors and each was indorsed by Felton individually. In this form they were delivered to the plaintiff. Thereafter the notes were indorsed by the company to the plaintiff and he in turn indorsed them in blank. In none of the notes was either the place of payment or the address of the maker specified. The defendant was not a party to any of the foregoing transactions.

On April 29, 1946, the plaintiff placed the three notes with the defendant for collection. The first note was paid at the defendant's bank on its due date March 31, 1947. The second note was not paid at maturity and was returned by the defendant to the plaintiff. Shortly thereafter it was paid by the corporation directly to the plaintiff. The third note — and this is the note involved in the present controversy — except for payments of interest down to March 31, 1948, remains unpaid.

The following was agreed to by the parties: "At all times material to this action, it was the practice and usage of . . . [the defendant], when holding a note for collection such as the notes . . . [here] to send a notice by mail to the maker about ten days before the due date, informing him that the bank held the note, that it would fall due on

a date specified, and inquiring what disposition he wished to make of it. . . . The bank continued to hold the note at its office through banking hours on the date of maturity. If it was not paid by the close of banking hours, the bank turned it over to a notary public to make a demand at the bank and send out notices of protest to the maker, payee and all indorsers. It was not the custom of the bank to have someone take the note itself to the maker's place of business or residence." It was also agreed that this procedure was followed with respect to the three notes placed with the defendant by the plaintiff.

On March 31, 1949, the third note was turned over to one Cameron, a notary public, who was also employed by the defendant. Cameron stamped on the note "Protested for Non-payment, Mar. 31, 1949." Notices of protest properly addressed were sent by mail to the corporation, to the company, and to Felton. The third note was returned to the plaintiff on April 21, 1949.

The maker of the third note (the corporation) was duly adjudged bankrupt on April 18, 1949, upon an involuntary petition filed on April 15, 1949.

Felton, "the indorser of the third note, is a man of means and would have been able to pay any judgment which might have been entered against him . . . as such indorser . . . ."

The questions for decision arise out of exceptions taken by the plaintiff to certain rulings on evidence and to the denial of his fourth request for ruling.

The fourth request asked the judge to rule that the defendant did not make proper presentment of the third note. Inasmuch as the facts relating to presentment were agreed this presents a question of law. The request was rightly denied.

Since this case arose prior to the adoption of the Uniform Commercial Code the rights of the parties must be governed by the negotiable instruments law, G. L. c. 107, §§ 94–97. Section 96 of that statute provides that "Where no place of payment is specified and no address is given" "[p]resentment for payment is made at the proper place" when "the

instrument is presented at the usual place of business or residence of the person to make payment." And § 97 requires that the instrument must be exhibited at the time payment is demanded. The plaintiff argues that this case is governed by these provisions, and since the defendant did not. strictly comply with them, it failed to make proper presentment.

· Prior to the adoption of the negotiable instruments law in. 1898, it was well settled in this Commonwealth in situations similar to this that a written demand mailed by a bank to the maker of a note to pay the note at the bank on the due date was sufficient to make the offices of the bank the place of payment. *Freeman* v. *Boynton*, 7 Mass. 483, 486. *Whitwell* v. *Johnson*, 17 Mass. 449, 452. *Grand Bank* v. *Blanchard*, 23 Pick. 305. And it has been said that "such previous notice to the promisor, and neglect on his part to pay the note at the bank, are a conventional demand and refusal, amounting to a dishonor of the note." *Mechanics Bank* v. *Merchants Bank*, 6 Met. 13, 24. *Warren Bank* v. *Parker*, 8 Gray, 221. A physical exhibition of the note was not required. *Freeman* v. *Boynton*, 7 Mass. 483, 486. *Gilbert* v. *Dennis*, 3 Met. 495, 496–497. We are not aware of any case decided since 1898 which holds that the language of G. L. c. 107, §§ 96, 97, either approves or disapproves the earlier practices sanctioned by our common law.

It has been said that the negotiable instruments law did not cover the entire field and that where no provision of the act controls, the rights of the parties are governed by the common law. *Union Trust Co.* v. *McGinty*, 212 Mass. 205, 206. *South Boston Trust Co.* v. *Levin*, 249 Mass. 45, 49. See G. L. c. 107, § 22. And even where the negotiable instruments law purports to deal with a subject and is not sufficiently explicit, resort may be had to the prior case law: *Commercial Trust Co.* v. *New England Macaroni Mfg. Co.* 247 Mass. 366. Thus, in the case last cited this court held that although a strict construction of G. L. c. 107, § 97, would require the actual exhibition of the instrument where payment is demanded, the adoption of the statute did not

change the previously established rule that, where payment is to be made at a bank, it is presumed that the note was at the bank on the day of maturity and that proof of its exhibition was not required.

It could be argued that a strict construction of § 96 would call for different presentment procedure than that employed by the defendant. But we are not disposed to construe that section as abrogating a rule which has been so deeply embedded in our law. Our common law rule arose from the custom of merchants, the development of which was described by Chief Justice Shaw in these terms: ". . . the custom of the banks of Massachusetts, of sending a notice to the maker of a note to come to the bank and pay it, and treating his neglect to do so during bank hours, on the last day of grace, as a dishonor, and all parties acquiescing in, and consenting to, such neglect as a dishonor, has become so universal and continued so long, that it may well be doubted, whether it ought not now to be treated as one of those customs of merchants, of which the law will take notice, so that every man, who is sufficiently a man of business to indorse a note, may be presumed to be acquainted with it, and assent to it, at least, until the contrary is expressly shown." *Grand Bank* v. *Blanchard,* 23 Pick. 305, 306. See *Mechanics Bank* v. *Merchants Bank,* 6 Met. 13, 23–24. If conformity to custom need be shown, it was not lacking. The bank followed its usual practice in dealing with this note. Its practice was similar to that of the other local banks. The payee, maker and indorsers of this note were acquainted with this practice, since it was followed in making demand for payment of the two earlier notes, and they acquiesced in its use with regard to them.

It is worthy of note that the Uniform Commercial Code, which became law in this Commonwealth on October 1, 1958, although not applicable here, would sanction the presentment procedure followed by the defendant. See G. L. c. 106, §§ 3–504, 4–210,[1] inserted by St. 1957, c. 765, § 1.

---

[1] General Laws c. 106, § 4–210 (1), provides: "Unless otherwise instructed, a collecting bank may present an item not payable by, through or at a bank

The plaintiff offered in evidence two volumes of testimony in an action previously tried in which the present plaintiff sought to recover against Felton on his indorsement and in which there was a finding for Felton. This evidence was excluded and the plaintiff made an offer of proof that this evidence would "prove that in fact the issues in said case were whether presentment had been properly made . . . and whether the failure to make such presentment relieved the indorser Felton from liability." The plaintiff further offered in evidence the pleadings in that case, the requests for rulings and the action of the court with respect to them, and the finding of the court. This evidence was likewise excluded and appropriate offers of proof were made. To all of these rulings the plaintiff excepted. In so far as this evidence was offered to establish the fact of improper presentment it was properly excluded. The defendant was not a party to the former action nor was it in privity with any party. What happened in that case was res inter alios and could not affect the defendant. *Pesce* v. *Brecher*, 302 Mass. 211. See *Warren Bank* v. *Parker*, 8 Gray, 221, 223. We assume that some of the evidence offered might have been admissible for the limited purpose of showing that the plaintiff had sued the indorser without success, but even on this assumption the plaintiff was not harmed. The basic and decisive question in the case at bar was whether the presentment procedure followed by the defendant was proper. In order to prevail the plaintiff had to show that it was not. Since we hold that the procedure followed was proper the plaintiff has no case and that would still be so even if this evidence had been admitted.

*Exceptions overruled.*

by sending to the party to accept or pay a written notice that the bank holds the item for acceptance or payment. The notice must be sent in time to be received on or before the day when presentment is due and the bank must meet any requirement of the party to accept or pay under section 3–505 by the close of the bank's next banking day after it knows of the requirement."