HELEN A. DURKIN *vs.* DAVID SIEGEL
(and a companion case[1]).

Suffolk.    December 9, 1959. — March 7, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Bills and Notes,* Notice of dishonor. *Mail. Notice.*

Under § 128 of G. L. c. 107, the negotiable instruments law, the mailing of a notice of dishonor of a promissory note, properly addressed and postage prepaid, by any form of first class mail, constituted actual notice. [448]

A notice of dishonor of a promissory note, sent by the holder of the note by certified mail, return receipt requested, properly stamped and addressed to an indorser of the note at his home, and returned by the post office to the holder, unopened, with the notation "refused" on the face of the envelope and the receipt unsigned, was due notice of dis-

[1] The companion case is by Gerald Davis and another against the same defendant.

honor under §§ 119 and 128 of G. L. c. 107, the negotiable instruments law, and the indorser was bound thereby, even if the letter would have come to his attention had it been sent by ordinary first class mail. [448–449]

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated May 9, 1957.

The actions were tried before *Goldberg,* J.

*Lester S. Cramer,* (*Bernard Kaplan* with him,) for the defendant.

No argument nor brief for the plaintiffs.

CUTTER, J. Promissory notes signed by one Browne were indorsed by the defendant. They were protested for non-payment and notice of dishonor was sent on January 17, 1957, "by the plaintiffs' attorney by certified mail, return receipt requested, properly stamped and addressed to the defendant at his home . . . [in] Brookline . . . . The letter, unopened, was returned by the post office . . . with the notation 'refused' . . . across the face of the envelope. The defendant testified that he was in Canada at the time." The defendant in each of these two actions presented a motion for a directed verdict, which was denied. Certain of the defendant's requests for instructions [2] were also denied. There were verdicts for the plaintiffs. The only question argued raised by the bill of exceptions is whether it was good notice of dishonor of promissory notes under G. L. c. 107, §§ 119 and 128 (both now repealed), to send a letter, otherwise in order, by certified mail, return receipt requested, rather than regular mail, where the letter was returned unopened and undelivered, marked "refused," with the blank form of post office receipt unsigned.

The Negotiable Instruments Law (G. L. c. 107) applies to this case, because these events occurred prior to October 1, 1958, the effective date of the Uniform Commercial Code, G. L. c. 106, as appearing in St. 1957, c. 765, § 1. See also § 21. The holder of a dishonored negotiable instrument

---

[2] These requested instructions were in substance (nos. 4 and 11) that the mailing by certified mail of a letter not received by the defendant was not sufficient notice of dishonor and (no. 12) that the burden is on the plaintiff to show that the letter came to the attention of the defendant.

must give prompt notice of dishonor to those secondarily liable. G. L. c. 107, § 112. Giving this notice is governed by G. L. c. 107, §§ 119,[3] 125–128, 131. The provision here controlling is G. L. c. 107, § 128 (§ 105 of the original uniform act), which reads, "Where notice of dishonor is duly addressed and deposited in the post office the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." Registered and certified mail, return receipt requested, are usually regarded by careful people as preferred methods of ensuring delivery. No exception is made in § 128 with respect to these or other types of first class mail. The section has been carried over into the Uniform Commercial Code in somewhat different language but without attempt to change its meaning. See G. L. c. 106, § 3–508, which in par. (3) provides that "[n]otice may be given in any reasonable manner" and that "[i]t may be oral or written," and in par. (4) states, "Written notice is given when sent although it is not received." The comments of the draftsmen show that no changes in §§ 96 and 105 of the Negotiable Instruments Law (G. L. c. 107, §§ 119 and 128) were intended. Am. Law Inst. Uniform Commercial Code, 1958 Official Text with comments, pp. 330–332. See *Budget Plan, Inc.* v. *Savoy,* 336 Mass. 322, 330, n. 1; *Batchelder* v. *Granite Trust Co.* 339 Mass. 20, 24; *Fairbanks, Morse & Co.* v. *Consolidated Fisheries Co.* 190 F. 2d 817, 822, n. 9 (3d Cir.).

The most carefully supervised available methods of mail delivery, registered and certified first class mail, are certainly a "reasonable manner" of giving notice of dishonor, for the propriety of the use of registered or certified mail for important notices has frequently been recognized in our statutes. Although some statutes permit notices by ordinary mail, in the absence of explicit language in a particular statute, a court would be slow to say that service by registered or

---

[3] General Laws c. 107, § 119 (§ 96 of the original uniform law), reads: "The notice may be in writing or merely oral, and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by non-acceptance or non-payment. It may in all cases be given by delivering it personally or through the mails."

certified[4] mail was not a compliance with such a statutory
requirement for notice by mail. Service by registered mail
in probate proceedings is familiar to us all. See Newhall,
Settlement of Estates (4th ed.) §§ 16, 285 (but see § 36).
See also *Kelley* v. *Peters*, 299 Mass. 166, 172.

In the light of the foregoing considerations, we hold that
§ 128 makes reasonable use of any form of first class mail
(not excluding registered or certified mail) for a properly
addressed notice of dishonor the equivalent of actual notice.
Section 128 is not merely an application of the principle
that the "mailing, postage prepaid . . . of a properly ad-
dressed letter is prima facie evidence of its receipt by the
addressee" (see *Anderson* v. *Billerica*, 309 Mass. 516, 518;
see also *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman*,
302 Mass. 508, 509–510) but, instead, is a legislative declara-
tion that the mailing is itself notice. Under § 128, once
proper mailing of the notice has been shown, the fact of
notice is established. See *Holmes* v. *Cabot*, 262 Mass. 152,
156–157; Beutel's Brannan, Negotiable Instruments Law
(7th ed.) § 105, pp. 1073–1074; Britton, Bills and Notes,
§ 216; 5 Uniform Laws Annotated, Negotiable Instruments,
part 2, § 105.

Persons who become secondarily liable upon negotiable
instruments are not unfairly burdened if they are held
bound by notices sent to them by any generally used form
of first class mail at a usual address. They can protect
themselves by stipulating (see § 131) that a particular
address be used and by arranging at that address during
any absence to have their mail received, opened, forwarded,
and collected (in the event of the receipt of a notification
from the postal authorities that it has not been possible to
deliver to them a piece of registered or certified mail). That
use of ordinary mail might have ensured delivery (see

---

[4] Certified mail may be used where by statute registered mail is required.
See G. L. c. 4, § 7, Forty-fourth, inserted by St. 1955, c. 683. Registered
mail and certified mail have essentially the same safeguards and advantages.
Each requires for delivery a postal receipt. As to each, in the event of non-
delivery or impossibility of delivery, a notice of the availability of the item
at a nearby post office will usually be left at the stated address. See 39 CFR
§§ 51.1–51.7; 58.1–58.6.

*Fields* v. *Western Millers Mut. Fire Ins. Co.* 182 Misc. [N. Y.] 895, 897–898) is completely irrelevant in view of § 128. Refusal of a registered or certified letter, of course, would not protect an indorser from the effect of notice. See *People* v. *Rone,* 3 Ill. 2d 483, 485–486.

Certain decisions in other States, dealing with different types of notices, have held that use of registered mail may have obstructed delivery of a notice, thus making the notice insufficient. We put to one side cases arising under statutes or court rules requiring actual receipt of a notice or document. See *Taxeira* v. *Arter,* 292 Mass. 537, 539; *Irish* v. *Monitor Ins. Co.* 264 Mich. 586, 588–590. See also *Old Colony R.R.* v. *Assessors of Quincy,* 305 Mass. 509, 513–514. Cases partly resting upon the strict construction of a provision for notice given by an insurer under an insurance policy also are not controlling. See *American Auto Ins. Co.* v. *Watts,* 12 Ala. App. 518, 522; *Fidelity & Cas. Co.* v. *Riley,* 168 Md. 430, 436–437; *Werner* v. *Commonwealth Cas. Co.* 109 N. J. L. 119, 121–122. Cf. *Fields* v. *Western Millers Mut. Fire Ins. Co.* 182 Misc. (N. Y.) 895, 897–898. Public policy may support holding an insurance company, a compensated indemnitor, to a strict compliance with the provisions set out in the policy drawn by it. No comparable public policy allows an indorser to escape secondary liability on a negotiable instrument signed by him because its holder has reasonably used a better and a more expensive method of notifying him by mail of the dishonor of the instrument than ordinary first class mail which the holder could have used quite properly and safely. Other cases involving restrictions on delivery are not helpful precedents in view of the provisions of § 128. See *Drake* v. *Comptroller of N. Y.* 278 App. Div. (N. Y.) 317, 320. Cf. *Commercial Trust Co.* v. *New England Macaroni Mfg. Co.* 247 Mass. 366, 367; *Manchester* v. *Van Brunt,* 2 Misc. (N. Y.) 228, 229. See also Merrill, Notice, §§ 627–644, esp. § 636, where it is said, "In the absence of statute or contract requirement, registration is not essential to the effectiveness of notification by

mail. If the monition is registered, however, as a precautionary act, this will not vitiate the effect of the mailing as notice, unless it is shown to have prevented the receipt of the letter." The cases cited in support of the last clause of this statement, however, do not deal with notices of dishonor, as to which by G. L. c. 107, § 128, mailing is made "due notice, notwithstanding *any* miscarriage in the mails" (emphasis supplied). The quoted words are broad enough to include nondelivery of certified or registered mail. Although some cases (see *Saffold* v. *Fellows*, 128 Misc. [N. Y.] 422, 424; but see *S. C.* 219 App. Div. [N. Y.] 865) intimate that the senders of certain types of notice are not entitled to require a receipt, it is not unreasonable for the holder of a dishonored negotiable instrument to ask for a postal receipt when he gives notice of dishonor to one who has become secondarily liable on that instrument.

The defendant's motions for directed verdicts could not have been granted. His requests for instructions were properly denied.

*Exceptions overruled.*